2011 UT App 424

**Anna WIGHT, Petitioner and Appellee,**

v.

**John Andrew WIGHT, Respondent and Appellant.**

**No. 20100665–CA.**

Court of Appeals of Utah.

Dec. 15, 2011.

John Andrew Wight, Provo, Appellant Pro Se.

Ronald D. Wilkinson, Orem, for Appellee.

Before Judges McHUGH, THORNE, and CHRISTIANSEN.

## OPINION

McHUGH, Associate Presiding Judge:

¶ 1 John Andrew Wight (Husband) appeals various rulings from the trial court's third amended divorce decree (Third Amended Order). We affirm on all issues, with the exception of the trial court's ruling on the allocation of the carpet allowance, which we remand for additional findings of fact and conclusions of law.

## BACKGROUND

¶ 2 Husband and Wife married in April 2001. The couple had a daughter in 2002 and a son in 2004. In August 2005, Wife moved out of the marital home with the children and filed for divorce. The domestic relations commissioner entered a temporary order on March 17, 2006, awarding Husband and Wife joint legal custody of the children while granting Wife temporary physical custody. Husband's parent time was to be de-termined by statute with the modification that he was granted two midweek visitations instead of one. The commissioner also ordered that Husband be responsible for the mortgage payments on the marital home, even though he obtained a new residence closer to Wife and the children three months after they left the marital home.

¶ 3 The parties continued to litigate issues surrounding custody and care of the children, parent time, and the marital home for the next few years. One major dispute between Husband and Wife centered around day care. After she obtained full-time employment in October 2006, Wife enrolled the children at a day care facility called Adventure Time. Husband paid his share of the expenses for Adventure Time until he lost his job in August 2007. Husband claims that he was available to take care of the children as an alternative to day care until May 2009, but that Wife would not let him do so. Husband did provide full-time care for the children between June and August 2007, while he was on medical disability leave.

¶ 4 Despite their disputes, Husband and Wife were able to stipulate to a joint custody parenting arrangement on March 19, 2008. The stipulation provided that the parties would alternate weekends with the children pursuant to the governing statute, but that Husband's parent time would continue until Monday morning when he would be responsible for taking the children to school. Additionally, during weeks when Husband did not have the children for the weekend, he would have them overnight on Thursday nights, and then again on the Tuesday night following the weekend the children spent with Wife. The parties adhered to the statute with regard to a holiday schedule and for extended parent time. On October 1, 2008, the trial court acknowledged Husband's changed employment situation and modified Husband's child support obligation to $273 per month. However, the court did not retroactively modify Husband's support obligation back to August 2007, the point when he lost his job.

¶ 5 One area of continuing disagreement was the allocation of expenses relating to the marital home. As noted, within months of Wife's move from the marital home with the

children, Husband also vacated the home so that he could live closer to the children's new residence. Nevertheless, the trial court ordered Husband to make the mortgage payments on the marital home. To cover the cost of the mortgage, Husband leased the marital home from March 2006 through April 2008, but he was unable to collect rent sufficient to cover the mortgage payments. Before the sale of the home, Husband collected $35,550 in rent and paid $48,974 in mortgage payments on the property, while Wife paid $3,894.47 in mortgage payments. The home was sold on October 27, 2008, and the proceeds totaled $42,312.26.

¶ 6 The issues surrounding Husband and Wife's divorce decree went to trial in the spring and summer of 2009 and involved six days of hearings and negotiations between the parties. During the second day of trial, April 16, 2009, the parties reached a partial stipulation regarding parent time, which was essentially the same parent time schedule as they had previously designated at the March 19, 2008 hearing. On the third day of trial, April 29, 2009, Husband and Wife reached a partial stipulation on financial issues. Husband and Wife agreed that child support would be paid pursuant to statute and that the proceeds from the marital home would be divided equally, but that Husband would have $5,234.07 deducted from his half of the proceeds and added to Wife's half to cover child support obligations and that Wife would have $6,000 deducted from her half of the proceeds and added to Husband's half to resolve the marital debt. Reserved for the trial court were issues of whether Wife should be reimbursed for the $3,894.47 she made in mortgage payments on the marital home, whether the contributions Husband made to the marital home should be split equally, and how a $7,000 carpet allowance would be allocated. Also reserved were issues surrounding whether Adventure Time would continue to be used by Wife when day care was needed, whether ACAFS Family Academy (ACAFS) would remain the location to exchange the children, what time Husband's parent time would begin and end when the children were not in school, and whether day care expenses would be reassessed by the court.

¶ 7 The parties met for a fourth day of trial on May 6, 2009. At that time, the parties submitted a proposed order memorializing the above financial stipulation, and they also submitted a series of stipulated facts. The fifth day of trial occurred on May 20, 2009, and at that time the trial court issued an order that incorporated the parties' stipulations with regard to both financial and parent time issues. On July 16, 2009, at the end of the sixth day of trial, the trial court ruled from the bench as to all other remaining disputes between Husband and Wife. The minute entry from that day indicates that the trial court appointed a special master to resolve parent time disputes between the parties, ordered the parties to continue to use ACAFS, awarded Wife $5,000 for day care costs at Adventure Time, permitted the use of Adventure Time going forward, denied Husband's request that Wife pay half of the mortgage payments, divided the remaining costs surrounding the home equally between the parties, and awarded Wife some of her attorney fees because of Husband's behavior during the years of litigation.

¶ 8 Wife's counsel drafted a proposed order based on the trial court's rulings at the July 16, 2009 hearing. Husband objected to the order, claiming that it mischaracterized the trial court's ruling by using inappropriate language, misconstrued the use of ACAFS, set pick-up and drop-off times for nonschool days that were inconsistent with the statute and thus not contemplated by the court, and imposed the cost of the full $7,000 carpet allowance on Husband. Husband also filed an objection to the form of the proposed special master order. The trial court overruled all of Husband's objections on February 2, 2010.

¶ 9 On March 22, 2010, the trial court met with counsel for both parties and then issued an amended findings and order on April 1, 2010. Husband moved to amend the amended findings and order on the ground that the trial court signed the wrong version of the proposed order and again objected to the special master order. Apparently in response to Husband's objections, the trial court issued a second amended findings and

order and a new special master order on June 4, 2010. Husband's counsel then withdrew.

¶ 10 Acting on his own behalf, Husband moved to alter or amend the second amended findings and order on two main grounds. First, he requested clarification as to whether he was entitled to Sunday nights with his children when school was not in session. Second, Husband objected to the trial court's determination that his pick-up and drop-off times for the children during the summer would be at 6 p.m. and 9 a.m., respectively, arguing that those times were not consistent with the statute. The minute entry following oral arguments on Husband's motion indicates that the parties stipulated that Husband was entitled to alternating Sunday nights with the children when school was not in session but that the trial court denied Husband's motion to amend with regard to pick-up and drop-off times. The trial court then awarded $60 in attorney fees to Wife. On September 10, 2010, Husband objected to the trial court's order following the August 30, 2010 hearing, although the grounds of his objection are unclear. The trial court found Husband impecunious on September 14, 2010.

¶ 11 On September 21, 2010, the trial court issued three more orders. The first order overruled Husband's objection to the order following the August 30, 2010 hearing on the grounds that Husband provided no specific arguments or analysis in his objection. In the second order (Second Order), the trial court again overruled Husband's objection to summer pick-up and drop-off times based on the fact that Husband's claim that the times were not consistent with the statute had already been ruled on and was barred by res judicata. As an alternative explanation, the trial court ruled that Husband's motion to amend the pick-up and drop-off times "is a motion to reconsider a final order which is not allowed under the Utah Rules of Civil

Procedure." The trial court then clarified that the parties had stipulated that Husband's parent time during the summer would be overnight and directed the parties to incorporate that language into a third amended order (Third Amended Order). Husband now appeals from the Second Order and the Third Amended Order.

## ISSUES AND STANDARDS OF REVIEW [1]

■ ¶ 12 Husband presents twelve issues on appeal that challenge the trial court's factual findings and legal conclusions on a variety of issues surrounding the custody of the children, the distribution of the marital property, and the award of attorney fees to Wife. "We review the district court's [factual] findings for clear error and its conclusions of law for correctness, affording the court some discretion in applying the law to the facts." *Arnold v. Arnold*, 2008 UT App 17, ¶ 5, 177 P.3d 89 (alteration in original) (internal quotation marks omitted).

## ANALYSIS

■ ¶ 13 To begin, Husband claims that the trial court's findings of fact and conclusions of law in the Third Amended Order are inadequate and that, as a result, he should be relieved of the requirement to marshal the evidence. Because Husband did not challenge the adequacy of the trial court's findings in the trial court, this issue is not preserved and we decline to address it. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶¶ 51, 56, 99 P.3d 801 (holding that the failure to object to the adequacy of findings of fact in the trial court prevented the appellant from doing so for the first time on appeal). Further, to the extent that Husband is arguing that the trial court's factual findings are not supported by the evidence, we decline to address those arguments because at no point did he marshal the evidence.[2]

---

1. Husband argues for the first time on appeal that the provision of the Third Amended Order that restrains the parties from making derogatory comments about each other is a violation of his First Amendment rights. Because this issue is not preserved, we do not consider it. *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (stating

that issues not raised before the trial court may not be raised on appeal).

2. In order to challenge the trial court's findings properly, "[t]he challenging party must marshal all relevant evidence presented at trial which tends to support the findings and demonstrate

## I. Custody of the Children

### A. ACAFS

¶ 14 Husband contends that the trial court exceeded its discretion by ordering that Husband and Wife continue to use ACAFS, a third-party organization that facilitates the pick-up and drop-off of children between parents. According to Husband, the trial court did not properly consider his testimony on the issue and instead "improperly relied upon the facile convention of labeling the parties as 'high conflict' without engaging in [the] requisite analysis for the label or for the determinations resulting from the use of that label." We review the trial court's decision to order the parties to continue to use ACAFS for an abuse of discretion. *See Childs v. Childs*, 967 P.2d 942, 944 (Utah Ct.App.1998) ("Trial courts may exercise broad discretion in divorce matters so long as the decision is within the confines of legal precedence."). Here, after hearing testimony from both sides regarding the issue, the trial court found that the parties have "ample and compelling" emotional issues between them and that these issues "justify the need for ACAFS."[3] Further, the trial court found that "[t]he use of ACAFS for pick-up and drop-off of the children has been beneficial to the parties. ACAFS has been successful in helping the parties communicate and limiting any potential emotional issues occurring between the parties at pick-up and drop-off." Because Husband has failed to marshal the evidence, we accept the trial court's findings as stated. *See Martinez v. Media–Paymaster Plus/Church of Jesus Christ of Latter-Day Saints*, 2007 UT 42, ¶ 17, 164 P.3d 384. Based on those findings, we conclude that the trial court did not exceed its discretion by ordering Husband and Wife to continue to use the services of ACAFS.

### B. Order to Appoint a Special Master

¶ 15 Husband next argues that the trial court erred by appointing a special master to resolve parent time disputes because the parties' stipulation did not authorize the special master for those purposes. Whether a stipulation "is ambiguous is a matter of law, which we review for correctness." *Yeargin, Inc. v. Auditing Div. of Utah State Tax Comm'n*, 2001 UT 11, ¶ 39, 20 P.3d 287. In support of his position, Husband cites a section of the trial transcript that makes it appear that the parties were agreeing to appoint a special master in lieu of using ACAFS to exchange the children. However, a few pages later in the transcript, the trial court clarified the issue, stating, "[A]m I hearing a stipulation to employ Mr. Jackman as a [S]pecial [M]aster?" Husband's attorney responded, "Yes." Then Wife's attorney stated, "For purposes of resolving any disputes between the parties for parent time issues," to which Husband's attorney again responded, "Yes, your honor." Given this exchange between the parties, we conclude that the trial court did not err in appointing a special master to resolve parent time disputes as agreed to by counsel for the parties.

¶ 16 Husband also claims that although the special master order purports to be issued pursuant to rule 53 of the Utah Rules of Civil Procedure, it grants the special master powers that are not contemplated by that rule. "[T]he proper interpretation of a rule of procedure is a question of law, and we review the trial court's decision for correctness." *American Interstate Mortg. Corp. v. Edwards*, 2002 UT App 16, ¶ 10, 41 P.3d 1142. Specifically, Husband contends that the order allows the special master to "make 'decisions,' to make them 'orally' and to make them 'binding,'" while rule 53 contemplates that the special master will only gather evidence through hearings and report its recommendations to the court. Contrary to Husband's assertions, the trial court granted the special master limited power. The order states that the special master will "[m]ake

---

why the findings are clearly erroneous." *West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1313 (Utah Ct.App.1991).

3. We are able to glean findings from both the written order of the trial court and from the trial court's statements on the record. *See* Utah R.

Civ. P. 52(a) ("It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court.").

decisions resolving conflicts between the parents relating to the interpretation and application of the [c]ourt's parent time orders *which do not significantly affect the [c]ourt's exclusive jurisdiction to determine fundamental issues of custody and visitation.*" (Emphasis added.) Additionally, rule 53 provides the trial court with considerable discretion in using a special master, stating, "The order of reference to the master may specify or limit his powers and may direct him to report only upon particular issues or to do or perform particular acts." *See* Utah R. Civ. P. 53(c). Based on the express language of rule 53, we conclude that the trial court had the authority to grant the special master limited power to resolve disputes between the parties regarding the interpretation of the trial court's parent time orders and to determine a therapist for the children if the parties could not agree to one. Furthermore, nothing in the order limited either party's ability to challenge the decisions of the special master by filing objections with the trial court. Under these circumstances, we are not convinced that the trial court erred in appointing the special master for the purposes set forth in the order.

C. Day Care

¶ 17 Husband next argues that the trial court erred by requiring Husband to pay day care fees when he was available and willing to care for the children himself. In ruling on this issue, the trial court stated, "I am going to award day care ... costs, but an offset of some portion, given your calculations and his participation and award the sum of $5,000." The trial court also found that Husband did not present any feasible alternatives to day care, stating, "I'm unpersuaded that [Husband] offered a practical response to the needs of day care, given [Wife's] employment at the time.... [I]t really contemplated too much shuffling of the children and was impractical." Husband has not marshaled the evidence to challenge these factual findings. Consequently, we accept them as stated. *See Martinez,* 2007 UT 42, ¶ 17, 164 P.3d 384. Based on these findings, we conclude that the trial court did not exceed its discretion in awarding $5,000 in day care fees to Wife.

¶ 18 Alternatively, Husband challenges some of the $5,000 in day care fees on the ground that they include tuition expenses for private kindergarten. Generally, a trial court may not order a parent to pay private school fees in addition to child support. *See Arnold v. Arnold,* 2008 UT App 17, ¶ 10, 177 P.3d 89. However, Husband does not direct us to any evidence that indicates that the trial court conflated the costs of day care with the costs of private kindergarten or that establishes the difference between the cost of day care and any private kindergarten tuition. *See* Utah R.App. P. 24(a)(9) (stating that an adequately briefed argument "contain[s] the contentions and reasons of the appellant with respect to the issues presented ... with citations to the authorities, statutes, and parts of the record relied on"). Consequently, this argument is inadequately briefed and we do not consider it further.

¶ 19 Finally, Husband argues that the trial court ignored the parties' stipulation that "both [parents] shall be listed as primary contacts for the children at day care," by ordering that "Adventure Time can continue to be used for the children." To begin, we are unable to determine how the decision to use Adventure Time as the children's day care provider affects whether Adventure Time lists both parents as primary contacts for the children. Furthermore, Husband fails to provide any citation to legal authorities that might explain his position. As such, this issue is also inadequately briefed and we decline to reach its merits. *See id.*

D. Right of First Refusal

¶ 20 Next, Husband argues that the trial court erred by limiting his right of first refusal to provide day care for the children to situations when Wife needs surrogate care for three hours or longer. Again, we review the trial court's decision for abuse of discretion. *See Childs v. Childs,* 967 P.2d 942, 944 (Utah Ct.App.1998). Utah Code section 30–3–33(15) states, "Parental care shall be presumed to be better care for the child than surrogate care and the court shall encourage the parties to cooperate in allowing the non-custodial parent, if willing and able to trans-

port the children, to provide the child care." Utah Code Ann. § 30–3–33(15) (Supp.2011).[4] Husband contends that the trial court erred because its ruling promotes surrogate care over parental care contrary to the intent of the statute. We disagree.

¶ 21 At trial, Husband and Wife stipulated that each party is granted the right of first refusal to provide day care for the minor children, but they could not agree as to how long the time period during which alternative care is required must be to trigger that right. The trial court concluded that although Husband desired the time period to be one or two hours, because of the "conflict between the parties" and the "transitional trouble" a shorter period of time would cause, three hours was the appropriate amount of time to trigger the right.

¶ 22 Furthermore, Utah Code section 30–3–33 merely lists "advisory guidelines." *See* Utah Code Ann. § 30–3–33; *Childs*, 967 P.2d at 945. Although Utah Code section 30–3–33(15) favors parental care, "[t]he statute's plain language does not entitle the willing and able noncustodial parent to provide day care. It merely suggests that the trial court encourage such an arrangement based on the presumption that parental care is better." *Childs*, 967 P.2d at 945–46. Here, the trial court did not take away Husband's right to provide care for his children; instead, it limited the right to periods when Wife needs surrogate care for three hours or longer in an attempt to limit difficult and frequent transitions of the children between the parents. We cannot say the trial court exceeded its considerable discretion in doing so.

### E. Summer Parent Time

¶ 23 Finally, Husband argues that the trial court erred by setting pick-up and drop-off times for the children during the summer that conflict with the mandates of Utah Code section 30–3–35. "As a general rule, 'we will not disturb the trial court's visitation determination absent a showing that the trial court has abused its discretion.'" *Trubetzkoy v. Trubetzkoy*, 2009 UT App 77, ¶ 7, 205

P.3d 891 (quoting *Childs*, 967 P.2d at 946 n. 2). However, "we review the trial court's interpretation of a statute for correctness." *Id.*

¶ 24 Utah Code section 30–3–35 sets out a minimal parent time schedule for the noncustodial parent, in this case, Husband. *See* Utah Code Ann. § 30–3–35(2) ("If the parties do not agree to a parent-time schedule, the following schedule shall be considered the minimum parent-time to which the noncustodial parent and the child shall be entitled."). The statute has two subsections that refer to pick-up and drop-off times of a child when school is not in session: Utah Code section 30–3–35(2)(a)(i)(C) and Utah Code section 30–3–35(2)(b)(i)(C). *See id.* § 30–3–35(2)(a)(i)(C), (2)(b)(i)(C). Both subsections recommend pick-up times around 9 a.m. *See id.* Husband contends that because both subsections state that summer parent time pick-up *may* be around 9 a.m. at the election of the noncustodial parent, the trial court exceeded its discretion by ordering that Husband's summer parent time pick-up be at 6 p.m. However, once again, Husband selectively cites the language of the statute in his brief.

¶ 25 Utah Code section 30–3–35(2)(a)(i)(C) states the schedule as Husband relates it, but then goes on to say, "unless the court directs the application of Subsection (2)(a)(i)(A) or (2)(a)(i)(B)." *See* Utah Code Ann. § 30–3–35(2)(a)(i)(C) (Supp.2011). In turn, subsection (2)(a)(i)(A) provides for "[o]ne weekday evening" of parent time "from 5:30 p.m. until 8:30 p.m.," and subsection (2)(a)(i)(B) provides for an alternative of parent time "one weekday from the time the child's school is regularly dismissed until 8:30 p.m." *See id.* § 30–3–35(2)(a)(i)(A)–(B). Here, the trial court awarded Husband parent time of one weekday on weeks he also has the children for the weekend and two weekdays during the weeks when the children spend the weekend with Wife. Because the trial court actually provided more than the statutory minimum provided by subsections (2)(a)(i)(A) or

---

4. Because the material provisions of the statute have not changed, we cite the current version of the Utah Code for the convenience of the reader.

(2)(a)(i)(B), it did not exceed its discretion. *See id.* § 30–3–35(2)(a)(i)(C).[5]

¶ 26 Thus, pursuant to the statute, the trial court was under no obligation to order Husband's summer parent time to begin in the morning. *See id.* Instead, the trial court was free to restrict Husband's midweek summer parent time to evenings. *See id.* § 30–3–35(2)(a)(i)(C). Moreover, the trial court granted Husband more parent time than required by statute in that Husband was allowed to have the children overnight during his midweek visits. Under these facts, we do not agree with Husband that the trial court either misinterpreted the statute or exceeded its discretion in setting pick-up and drop-off times for Husband during the summer at 6 p.m. and 9 a.m., respectively.

## II.  The Marital Home

¶ 27 Husband also challenges two of the trial court's rulings with regard to the marital home. First, he argues that the trial court erred when it denied his request that Wife pay half of the mortgage payments during the period when it was vacant. Second, Husband argues that the trial court erred in awarding Wife $3,500 for reduction of the marital assets due to the $7,000 carpet allowance. " 'Trial courts have considerable discretion in determining . . . property distribution in divorce cases, and [their decisions] will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated.' " *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 8, 176 P.3d 476 (omission in original) (quoting *Howell v. Howell*, 806 P.2d 1209, 1211 (Utah Ct.App.1991)). "Indeed, the trial court's discretion is so broad 'that its actions enjoy a presumption of validity.' " *Trubetzkoy*, 2009 UT App 77, ¶ 8, 205 P.3d 891 (quoting *Elman v. Elman*, 2002 UT App 83, ¶ 17, 45 P.3d 176).

¶ 28 When ruling on the marital home, the trial court first noted that its decision "encapsulate[d] a lot of equitable considerations." It then remarked that "courts do not generally criticize or are generally not critical of the manner and method by which people separate." Notwithstanding that observation, the trial court found that after Wife initiated the separation by moving from the marital home with the children, it was "ill-advised" for Husband also to leave the home, renting it "for amounts less than would cover the mortgage." The trial court further found that Husband's decision "tripled" the parties expenses, rather than "reduc[ing] expenses by immediately placing the marital home for sale." Based on these findings, the trial court denied Husband's request that he be reimbursed for half of the mortgage payments he made while the marital home was vacant. Again, Husband has made no attempt to marshal the evidence in order to challenge the trial court's factual findings. *See Martinez v. Media–Paymaster Plus/Church of Jesus Christ of Latter-Day Saints*, 2007 UT 42, ¶ 17, 164 P.3d 384. Accepting those findings, we conclude that the trial court did not exceed its discretion in denying Husband's request to be reimbursed for half of the mortgage payments. We also note that the trial court did not completely relieve Wife from all of the burden of the mortgage payments. Instead, the trial court reimbursed Wife for only half of the amount she paid on the mortgage in 2008 when Husband was unemployed and unable to make the payments.

¶ 29 Husband next challenges the trial court's award of $3,500 to Wife for "reduction of the marital assets pursuant to the carpet allowance and other related expenses." Husband argues that the trial court stated in the trial transcript that "the carpet allowance of $7,000" should be "shared equally by the parties" and asserts that as a result, the order that states that Husband owes Wife $3,500 for the carpet allowance is in error. Yet, Wife also points to the trial transcript and notes that moments after the trial court stated that costs incident to sale of the marital home, which included the carpet allowance, should be shared equally, Wife's counsel explicitly asked the trial court if "[Wife] would receive a credit of $3,500 for the carpet allowance" and the trial court responded, "Right." In-

---

5.  Utah Code section 30–3–35(2)(b)(i)(C) utilizes similar language. *See* Utah Code Ann. § 30–3–35(2)(b)(i)(C) (Supp.2011).

deed, when Husband objected to Wife's proposed order, arguing that Wife had misstated the trial court's findings with regard to this issue, the trial court stated, "The [c]ourt overrules the objection as the finding [that Husband owes Wife $3,500 for the carpet allowance] is consistent with the [c]ourt's findings and [Wife] is not limited to the specific words used in the bench ruling." However, we agree with Husband that the trial court's ruling appears to be internally inconsistent.

¶ 30 The trial court ruled that Husband and Wife would share the $7,000 expense equally. Because the carpet allowance was provided to the buyer of the marital home by a deduction in the amount due at closing, it was accounted for in the net proceeds. As best as we can determine, those proceeds were first split equally between the parties and then subjected to adjustments as determined by the trial court. Because the amount of total proceeds was reduced by $7,000, each spouse bore $3,500 of that deduction when the proceeds were divided equally between the parties. If Wife is credited with $3,500 as ordered by the trial court, she will have been reimbursed for the half she was order to pay in that ruling. Contrary to the trial court's decision that the parties should bear the carpet allowance equally, the net result of the court's order is that Wife pays nothing toward the carpet allowance, while Husband pays the full $7,000. Because we are unable to determine which result the trial court intended, we remand for clarification of this issue.

¶ 31 In summary, the trial court had considerable discretion to determine an appropriate property distribution and its rulings on such matters are entitled to a presumption of validity. We are not persuaded that Husband has demonstrated that the trial court has exceeded its discretion when it distributed marital assets with regard to the mortgage payments. However, we remand for clarification of the allocation of the carpet allowance.

### III.  Award of Attorney Fees

#### A.  Attorney Fees at Trial

¶ 32 Finally, Husband claims that the trial court exceeded its discretion when it awarded Wife $4,000 in attorney fees because "[t]he trial court failed to adequately present its findings of facts" and did not consider "the financial status and the likely financial results of the parties" when awarding the fees.

¶ 33 Utah Code section 30–3–3 governs the award of attorney fees in a divorce action. *See* Utah Code Ann. § 30–3–3 (Supp.2011). "Both the decision to award attorney fees and the amount of such fees are within the trial court's sound discretion." *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 49, 176 P.3d 476. "Should the trial court decide to award fees, it must make detailed findings of fact supporting its determination." *Connell v. Connell*, 2010 UT App 139, ¶ 27, 233 P.3d 836. Further, there are two classes of attorney fees under Utah Code section 30–3–3: those fees "incurred in *establishing* court orders and those incurred in *enforcing* court orders." *Id.* ¶ 28. Specifically, Utah Code section 30–3–3(2) provides that "[i]n any action to enforce an order of custody, parent-time, child support, alimony, or division of property in a domestic case, the court may award costs and attorney fees upon determining that the party substantially prevailed upon the claim or defense." Utah Code Ann. § 30–3–3(2). Although "[f]ees awarded under subsection (1) [ (fees incurred establishing court orders) ] must be based on the usual factors of need, ability to pay, and reasonableness," *see Connell*, 2010 UT App 139, ¶ 28, 233 P.3d 836, if the trial court awards attorney fees under subsection (2) [ (fees incurred enforcing court orders) ], it " 'may disregard the financial need of the moving party,' " *see id.* (quoting *Finlayson v. Finlayson*, 874 P.2d 843, 850 (Utah Ct.App. 1994)). This is because "fee awards under subsection (2) serve no equalizing function but allow the moving party to collect fees unnecessarily incurred due to the other party's recalcitrance." *Id.* ¶ 30.

¶ 34 Here, the trial court detailed Husband's "actions and failures," which included Husband's repeated failure to pay his child support obligation, his half of the insur-

ance premiums for the children, his half of the uncovered medical expenses for the children, the custody evaluation fees, and the mortgage payments he was ordered to maintain, all of which "resulted in [Wife] incurring substantial attorney fees." The trial court also found that Husband's failures forced Wife "to bring multiple Orders to Show Cause." The trial court then found that Wife's attorney fees were "actually incurred," and "reasonable and necessary," and that Husband "has the ability to pay the attorney fees with the offsets and home equity he is receiving in this matter."

¶ 35 Given its detailed findings and thoughtful analysis of the history of the case, we cannot conclude that the trial court exceeded its discretion in awarding Wife $4,000 in attorney fees.

### B. Attorney Fees on Appeal

¶ 36 Wife also requests her attorney fees incurred on appeal. "Generally, when the trial court awards fees in a domestic action to the party who then substantially prevails on appeal, fees will also be awarded to that party on appeal." *Kimball v. Kimball*, 2009 UT App 233, ¶ 52, 217 P.3d 733 (internal quotation marks omitted). Here, although Wife has substantially prevailed on most issues raised by Husband, including those that resulted in an award of fees in the trial court, she has not yet prevailed with regard to the issue of the carpet allowance. Accordingly, to the extent that the attorney fees relate to Husband's appeal of issues that were the subject of the trial court's fee award, Wife is entitled to those fees on appeal less any fees relating to the carpet allowance issue if the trial court resolves that issue in favor of Husband.

### CONCLUSION

¶ 37 We affirm as to all issues, except that we remand for the trial court to reconsider its ruling with regard to the carpet allowance. Trial courts have considerable discretion in divorce matters, and at no point did the trial court here exceed its discretion when ruling on issues surrounding parent time or the expenses of the parties' children. The trial court also acted within its discretion

in ordering Husband to pay Wife $4,000 in attorney fees due to Husband's recalcitrance during litigation.

¶ 38 As the prevailing party on the issues that led to an award in the trial court, we award Wife her fees incurred with respect to those same issues on appeal and remand for a determination of the amount of those fees.

¶ 39 Affirmed in part, remanded in part.

¶ 40 WE CONCUR: WILLIAM A. THORNE JR., Judge and MICHELE M. CHRISTIANSEN, Judge.