IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Ellery Bruce Summer, | ) | MEMORANDUM DECISION |
| | ) | |
| Petitioner and Appellant, | ) | Case No. 20101004-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (June 1, 2012) |
| Mary Paige Summer, | ) | |
| | ) | 2012 UT App 159 |
| Respondent and Appellee. | ) | |

-----

Third District, Tooele Department, 084300208
The Honorable Stephen L. Henriod

Attorneys:     Jay L. Kessler, Magna, for Appellant
                      Gary Buhler, Grantsville, for Appellee

-----

Before Judges McHugh, Roth, and Christiansen.

McHUGH, Presiding Judge:

¶1     Ellery Bruce Summer (Husband) appeals from the trial court's rulings holding him in contempt, refusing to hold Mary Paige Summer (Wife) in contempt, and awarding alimony and attorney fees to Wife. We affirm in part and remand in part for further findings.

¶2     Husband filed a petition for divorce on May 7, 2008. After briefing and argument, the domestic relations commissioner (the Commissioner) granted Wife's motion for temporary relief. The Commissioner's October 16, 2008 order mandated that Husband pay a number of the couple's financial obligations, including the first and second mortgages on the marital home, and premiums for "all insurance polic[ies]

existing at the time of the parties' separation." After the parties separated, Husband had stopped making premium payments for Wife's health insurance. Thus, the Commissioner's October 16, 2008 order required that Husband resume making those payments.

¶3 Thereafter, Husband paid most of the bills except the premium necessary to maintain Wife's health insurance, leaving her uninsured.[1] On November 3, 2008, the Commissioner held an order to show cause hearing to determine whether Wife's allegations that Husband had failed to pay the premium were accurate. Because Husband admitted that he had not complied with the order, the Commissioner certified the issue of contempt and attorney fees to the trial court for an evidentiary hearing. Before doing so, however, the Commissioner instructed Husband to make his best efforts to reinstate the insurance policy if it was a cost-effective option. Although the open enrollment period had closed, the Commissioner and Wife indicated that the policy could be reinstated by court order. Husband raised no objections to the Commissioner's order.

¶4 On February 10, 2009, the trial court held an evidentiary hearing regarding the issues certified to it by the Commissioner. At the hearing, Husband testified that he was doing everything he could to pay marital expenses but simply did not have enough money to pay Wife's health insurance premium. Husband admitted, however, that during the same period he failed to pay Wife's insurance premium, he made payments on his truck, his credit cards, the first and second mortgage on the marital home, and gave money to his children from a prior marriage. He also indicated that he was living with his children and did not pay rent. The trial court concluded that Husband was in contempt of court for failing to pay Wife's health insurance premium. As a result, the court sentenced him to pay a $1,000 fine and serve thirty days in jail, but suspended the jail sentence. The parties then reached a temporary agreement that Husband would "add [Wife] back on to the . . . medical insurance program," and Wife would agree to take on some additional financial obligations.

¶5 Subsequently, Wife informed the trial court that she remained uninsured, and the trial court held a second order to show cause hearing on June 8, 2009. The record on

_____

[1]At that time, Wife was sixty-one years old and could not otherwise afford health insurance.

appeal contains only a minute entry from this hearing, which indicates that Husband claimed he was unable to make the premium payments because Wife had withdrawn funds from a joint account Husband typically used to pay the premiums. The minute entry also reflects that Husband reported that he had attempted to reinstate the medical insurance but was unable to do so. The trial court again held Husband in contempt for failing to reinstate Wife's medical insurance. As a part of this ruling, the court ordered Husband to serve the original thirty days in jail and an additional thirty days, for a total of sixty days. It appears that Husband only served one day of this sentence.

¶6 Eventually, the parties reached a stipulated agreement and requested an opportunity to place it in the record. At a hearing on September 24, 2009, the parties informed the trial court that as a part of their settlement agreement, they would each "immediately" file for Chapter 7 bankruptcy protection to "discharge all of their debts." The trial court memorialized the parties' stipulation in an order, prepared by Husband's counsel, stating, in relevant part,

> [T]he parties are to look into filing a bankruptcy as soon as feasibly possible. Each party is to pay either one-half of the filing fee and attorney[] fees for the bankruptcy, if filed jointly; or each party will pay their own costs and fees if filed separately. . . . Following the bankruptcy outcome, the parties may come back to the court for the final divorce.

Neither party objected to this order.

¶7 On June 14, 2010, the trial court entered a bifurcated divorce decree, and on September 8, 2010, held a trial regarding the parties' personal property and debts. The trial court entered the final divorce decree on November 15, 2010, which was supported by findings of fact and conclusions of law. The decree awarded Wife the marital home with $50,000 in equity in lieu of alimony, subject to its indebtedness. It ordered Husband to pay $4,400 to Wife for the medical expenses she had incurred to date due to Husband's failure to reinstate her health insurance and to pay every medical expense to be incurred by Wife from the date of the decree until Husband deeded his interest in the marital home to her. Finally, the trial court awarded Wife attorney fees of $6,025 for the time and effort required by eight pretrial hearings. Husband now appeals.

I. Contempt Orders Against Husband and Wife

A. Husband's Contempt

¶8     The trial court twice held Husband in contempt for his failure to comply with the order that he pay Wife's medical insurance premium.[2]  We review a trial court's decision to hold a party in contempt and impose sanctions for a "clear abuse of discretion."  *See Barton v. Barton*, 2001 UT App 199, ¶ 9, 29 P.3d 13 (internal quotation marks omitted).  Contempt of court includes "disobedience of any lawful judgment, order or process of the court."  *See* Utah Code Ann. § 78B-6-301(5) (2008).  "'As a general rule, in order to prove contempt for failure to comply with a court order it must be shown that the person cited for contempt knew what was required, had the ability to comply, and intentionally failed or refused to do so.'"  *Taylor v. Taylor*, 2011 UT App 331, ¶ 6, 263 P.3d 1200 (mem.) (quoting *Von Hake v. Thomas*, 759 P.2d 1162, 1172 (Utah 1988)).  These three elements must be shown "by clear and convincing evidence in a civil contempt proceeding."  *Von Hake*, 759 P.2d at 1172.

¶9     Here, Husband contends that the trial court erred when it held him in contempt because when he was ordered to pay the insurance premium he had already ceased making payments, was under no obligation to make the payments, and did not have the resources to do so.  Husband's argument misconstrues the nature of the proceedings in the trial court.  Although Husband had discontinued making the premium payments when the parties separated, the Commissioner ordered him to start making those payments again on October 16, 2008.  At the November 3, 2008 order to show cause hearing before the Commissioner, Husband raised no objection to Wife's argument that, although the insurer had cancelled Wife's policy due to nonpayment, it could be reinstated.  Furthermore, at the hearing before the trial court on February 10, 2009, Husband steadfastly denied that he had been ordered to maintain Wife's health insurance, without indicating that he had been unsuccessful in having it reinstated.  Tellingly, Husband's counsel assured the trial court that Husband was familiar with the order but simply disagreed with it.  The trial court also heard evidence that Husband

_____

[2]Husband contends that he was held in contempt three times; however, our review of the record indicates he was held in contempt only at the February 10, 2009 hearing and the June 8, 2009 hearing.  None of Husband's other record citations direct us to a third incident.

had sufficient funds to make cash gifts to his children from a prior marriage and to pay other bills but had made the unilateral decision not to make the premium payment necessary to maintain Wife's health insurance.

¶10    Based on these facts, we cannot conclude that the trial court's first finding of contempt was an abuse of discretion.  There is clear and convincing evidence that Husband knew that he had been ordered to resume making the premium payments for Wife's health insurance and had the ability to pay for the insurance but "spitefully" decided to give money to his children and pay less critical bills instead.  Additionally, it appears, at least at this time, that it was within Husband's ability to reinstate Wife's insurance.  Wife informed the Commissioner that she had checked and confirmed that the insurance company would reinstate the insurance "based on the [court's] order," the Commissioner agreed, and Husband raised no concerns about doing so at that time.  Even three months later at the February 10, 2009 hearing to consider the Commissioner's contempt recommendation, Husband agreed to reinstate Wife's policy without offering any indication that he could not do so.  It was not until the June 8, 2009 hearing that Husband first indicated that he was unable to reinstate Wife's health insurance.  While Husband may have accurately reported that reinstatement was not possible at that time, there is nothing in the record on appeal that indicates he could not have done so eight months earlier if he had complied with the Commissioner's October 16, 2008 order.  Accordingly, we affirm the trial court's contempt order with respect to the first order to make the premium payments.

¶11    The trial court held Husband in contempt again at the June 8, 2009 hearing.  On appeal, however, Husband has only provided the minute entry of this hearing and no transcript of the proceedings, which leaves us with no way to ascertain the trial court's basis for the finding of contempt.  *See State v. Nielsen*, 2011 UT App 211, ¶ 4, 257 P.3d 1103 (per curiam) ("An appellant has the burden to provide an adequate record for review." (citing Utah R. App. P. 11(e)(2)).  Because we cannot properly review the trial court's decision, we presume the regularity of those proceedings based on the minute entry alone.  *See State v. Pritchett*, 2003 UT 24, ¶ 13, 69 P.3d 1278 ("When crucial matters are not included in the record, the missing portions are presumed to support the action of the trial court." (internal quotation marks omitted)).  Thus, we also affirm the second order of contempt.

B.  Wife's Alleged Contempt

¶12    Husband next argues that the trial court erred by not holding Wife in contempt for failing to file for bankruptcy protection pursuant to the trial court's November 27, 2009 order. Wife argues that Husband lacks standing to raise this argument. Utah courts have previously held that "in Utah, as in the federal system, standing is a jurisdictional requirement." *Brown v. Division of Water Rights of Dep't of Natural Res.*, 2010 UT 14, ¶ 12, 228 P.3d 747. Although Wife offers no analysis and cites no authority to support her position, where an issue affects our subject matter jurisdiction, we have an "independent obligation" to resolve it. *See In re Adoption of Baby E.Z.*, 2011 UT 38, ¶ 36, 266 P.3d 702, *cert. denied*, 132 S. Ct. 1743 (2012).

¶13    In *Chen v. Stewart*, 2005 UT 68, 123 P.3d 416, the Utah Supreme Court concluded that a mother did not have standing to challenge a contempt order against her daughter because she could not establish that she was aggrieved by it. *See id.* ¶¶ 53-54. In reaching that conclusion, the supreme court explained that "[t]o satisfy the basic requirements of the traditional standing test, a party must allege that he or she suffered or will imminently suffer an injury that is fairly traceable to the conduct at issue such that a favorable decision is likely to redress the injury." *Id.* ¶ 50 (internal quotation marks omitted). The conduct at issue here is the trial court's failure to hold Wife in contempt, not Wife's failure to file for bankruptcy protection. *See id.* ¶¶ 48-54 (analyzing the impact of the trial court's order of contempt against daughter, not the impact of the daughter's contemptuous conduct). We have found few decisions, and none of them from Utah, addressing whether one party has standing to appeal the failure to hold the other party in contempt. Most jurisdictions that have addressed the issue apply the basic requirements of standing as outlined in *Chen*.

¶14    In determining whether a party "will imminently suffer an injury that is fairly traceable" to the trial court's decision to not hold Wife in contempt, we must consider the effect that the contempt order will have on Husband. *See id.* ¶ 50. *Compare In re Marriage of Metz*, 598 N.E.2d 369, 374 (Ill. App. Ct. 1992) (holding that while "civil contempt is designed to coerce the contemnor to comply with a court order for the benefit of the opposing litigant," a party has no "standing to challenge the failure to impose incarceration as a sanction for civil contempt"), *with State ex rel. Johnson v. Schwartz*, 542 P.2d 153, 155 (Or. Ct. App. 1975) (holding that a party had standing to appeal the reversal of a contempt order because if it had been upheld it would have directly benefitted that party). Thus, a party will generally not have standing to appeal a trial court's failure to hold another party in criminal contempt because "the only

proper objective of criminal contempt is as punishment to vindicate the authority of a court." *See Pattinson v. Stephens*, 436 So. 2d 975, 976 (Fla. Dist. Ct. App. 1983); *see also Von Hake v. Thomas*, 759 P.2d 1162, 1168 (Utah 1988) ("A contempt order is criminal if its purpose is to vindicate the court's authority, as by punishing an individual for disobeying an order, even if the order arises from civil proceedings."). However, where a party challenges a court's failure to hold another party in civil contempt, as is the case here, standing is dependent on whether the failure to do so directly affects the moving party's interests in the litigation. *See, e.g., Johnson*, 542 P.2d at 155. This is because the purpose of most civil contempt orders is "either to coerce an individual to comply with a court order given for the benefit of another party or to compensate an aggrieved party for injuries resulting from the failure to comply with an order." *Von Hake*, 759 P.2d at 1168.

¶15 Here, Husband argues that Wife violated a court order that he alleges required both parties to file for bankruptcy protection. Because Husband claims he complied with the order and Wife did not, he alleges that Wife retained substantial debt and Husband was relatively debt free, which skewed the court's ultimate analysis in favor of Wife. Accordingly, if the trial court had held Wife in contempt, coercing her to file for bankruptcy protection, Husband's obligations to Wife would have been less, thereby directly benefitting Husband. Therefore, we hold that Husband has standing to challenge the trial court's decision not to hold Wife in contempt. *See Chen*, 2005 UT 68, ¶ 50.

¶16 While Husband has standing, he does not prevail on the merits of this issue. The November 27, 2009 order states, "As it is clear the parties do not make enough money to pay the marital debt, the parties are to look into filing a bankruptcy as soon as feasibly possible." The plain language of the trial court's order indicates that the parties were instructed to research their bankruptcy options, not that they were required to file for bankruptcy protection. Furthermore, the trial court determined that Wife did not file a bankruptcy action partially because Husband never conveyed the marital home to her as required by the November 27, 2009 order and never reinstated her health insurance. The trial court also found credible Wife's testimony that her bankruptcy attorney had advised her against filing. Under these circumstances, we cannot conclude that the trial court exceeded its discretion when it refused to hold Wife in contempt. *See* Utah Code Ann. § 78B-6-301(5) (2008) (listing "disobedience of any lawful judgment, order or process of the court" as contemptuous).

## II. Property Award

¶17    Husband contends that the trial court's findings of fact are insufficient to support the award of the marital home to Wife in lieu of alimony and the requirement that Husband pay all medical expenses incurred by Wife after her health insurance was terminated.  Primarily, Husband argues that the trial court "did not assess the income or expenses of the parties with relation to the actual award" and that the trial court erred by not considering Wife's fault in the divorce.  In making this argument, Husband cites no case law, provides no record citations, and offers little analysis to support his reasoning.  Moreover, the analysis he does provide does not accurately portray the trial court's findings of fact.  *See* Utah R. App. P. 24(a)(9) ("The argument shall contain the contentions and reasons of the appellant with respect to the issues presented . . . with citations to the authorities, statutes, and parts of the record relied on.  A party challenging a fact finding must first marshal all record evidence that supports the challenged finding.").

¶18    "When challenging factual findings, the challenging party 'must begin by undertaking the arduous and painstaking marshaling process.'"  *Kimball v. Kimball*, 2009 UT App 233, ¶ 21, 217 P.3d 733 (quoting *West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1315 (Utah Ct. App. 1991)).  "After marshaling the evidence supporting the trial court's findings, the [challenger] must then show that these same findings are so lacking in support as to be against the clear weight of the evidence, thus making them clearly erroneous."  *Majestic Inv. Co.*, 818 P.2d at 1315 (internal quotation marks omitted).  This requires that "the challenger . . . present, in comprehensive and fastidious order, every scrap of competent evidence introduced at trial which supports the very findings the appellant resists," and then "the challenger must ferret out a fatal flaw in the evidence."  *Id.* (emphasis omitted).  If a party fails to marshal the evidence, we may decline to consider the appellant's argument; however, we have the "discretion to consider independently the whole record and determine if the decision below has adequate factual support."  *Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶ 20, 164 P.3d 384.  Although Husband presents some evidence supporting the trial court's ruling, he neglects to mention several significant findings and has failed to satisfy the marshaling requirement.

¶19    We also conclude that the trial court's ruling was supported by sufficient findings of fact.  "'In a divorce proceeding, the trial court may make such orders

concerning property distribution and alimony as are equitable. The trial court has broad latitude in such matters, and orders distributing property and setting alimony will not be lightly disturbed.'" *Olsen v. Olsen*, 2007 UT App 296, ¶ 8, 169 P.3d 765 (quoting *Jones v. Jones*, 700 P.2d 1072, 1074 (Utah 1985)). These orders must be supported by findings of fact that "'show that the court's judgment or decree follows logically from, and is supported by, the evidence. The findings should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached.'" *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 16, 176 P.3d 476 (quoting *Gardner v. Gardner*, 748 P.2d 1076, 1078 (Utah 1988)).

¶20  Here, the trial court found that Husband received income of $2,805 per month from retirement and social security and determined that his claimed expenses were inflated by at least $1,000 per month. In contrast, the court determined that Wife's income was $1,619 per month, which included "one-half of [Husband's] State retirement, her social security, and rent from the parties' disabled son";[3] the trial court determined that her $2,033 in monthly expenses were "exceedingly reasonable," and noted that Wife was also caring for the parties' disabled adult son and Wife's elderly mother who both lived with Wife in the marital home. Because of Wife's shortfall in income every month, the fact that she cared for the parties' adult son, and her lack of health insurance due to Husband's actions, we are not persuaded that the trial court exceeded its discretion in equitably awarding Wife the marital home with $50,000 in equity, in lieu of alimony.

¶21  With regard to the award of Wife's medical expenses incurred after Husband failed to reinstate her health insurance, we note that Wife incurred these expenses only because of Husband's recalcitrance with respect to her health insurance premium. As indicated in the previous section, *see supra* ¶¶ 8-11, the trial court made substantial findings on this issue, and we conclude that they are sufficient to support this award.
¶22  Additionally, Husband argues that the trial court erred because it failed to consider Wife's fault in making its award; however, trial courts are not required to consider fault in making alimony awards. *See* Utah Code Ann. § 30-3-5(8)(b) (Supp. 2011) ("The court may consider the fault of the parties in determining alimony."); *Boyer*

---

[3]Husband contends that the trial court failed to consider that approximately $660 of his income was paid to Wife. However, the trial court considered this factor when it mentioned that Wife's income included a portion of Husband's retirement income.

*v. Boyer*, 2011 UT App 141, ¶ 12, 259 P.3d 1063 (recognizing that while trial courts may consider fault in awarding alimony, they are not required to do so).  Next, Husband contends that alimony could not be awarded because it was eliminated by the September 24, 2009 order.  As Husband admits, however, this was a temporary order that could be changed by subsequent orders of the court.  *Cf. Tucker v. Tucker*, 910 P.2d 1209, 1216 (Utah 1996) ("[A] temporary custody order should not be given the weight of a permanent order.").  Accordingly, we determine that the trial court properly awarded Wife the marital home and the medical expenses she incurred after Husband allowed her health insurance to lapse.[4]

### III.  Attorney Fees

#### A.  At Trial

¶23     Husband argues that the trial court exceeded its discretion in awarding attorney fees because it did not make specific findings of fact detailing Wife's need, Husband's ability to pay the fees, and the reasonableness of the fees.  However, these findings need not be made in every instance.[5]

¶24     "Utah Code section 30-3-3 governs the award of attorney fees in a divorce action."  *Wight v. Wight*, 2011 UT App 424, ¶ 33, 268 P.3d 861.  This section provides that "there are two classes of attorney fees . . . :  those fees incurred in *establishing* court orders and those incurred in *enforcing* court orders."  *See id.* (internal quotation marks omitted).  Under subsection (1), fees awarded in establishing orders "must be based on the usual factors of need, ability to pay, and reasonableness."  *See id.* (internal quotation marks omitted).  Under subsection (2), fees awarded in enforcing orders need not be

---

[4]Husband also argues that the trial court erred in awarding the marital home to Wife and requiring him to pay Wife's medical bills because Wife's debts should have been discharged in bankruptcy.  As previously discussed, this argument is without merit.  *See supra* ¶ 16.

[5]A trial court may award attorney fees based on its inherent power to sanction.  *See Miles v. Miles*, 2011 UT App 359, ¶ 16, 269 P.3d 958.  However, neither party argues that attorney fees were awarded as a sanction.  Accordingly, we do no address this issue further.

based on the "financial need of the moving party," *see id.* (internal quotation marks omitted), and the court may, in its discretion, "award no fees or limited fees against a party if the court finds the party is impecunious," Utah Code Ann. § 30-3-3(2). Instead, fees may be awarded if the moving "party substantially prevailed upon the claim or defense." *Id.*; *see also Connell v. Connell*, 2010 UT App 139, ¶ 28, 233 P.3d 836. "This is because fee awards under subsection (2) serve no equalizing function but allow the moving party to collect fees unnecessarily incurred due to the other party's recalcitrance." *Wight*, 2011 UT App 424, ¶ 33 (internal quotation marks omitted). Under either subsection, however, the decision of whether to award attorney fees and the amount of such fees "are within the trial court's sound discretion." *See id.* (internal quotation marks omitted). If the trial court decides to award fees, however, "it must make detailed findings of fact supporting its determination." *See id.* (internal quotation marks omitted).

¶25    The trial court awarded Wife attorney fees for hearings that established orders and for hearings that enforced orders. For instance, Wife brought several motions seeking to enforce the court order that Husband pay her medical insurance.[6] The court held Husband in contempt on two separate occasions for failing to pay the insurance premium, finding that Husband "specifically paid all the obligations that benefitted him and spitefully chose to drop [Wife] from the medical insurance." Thus, Wife "substantially prevailed" at these hearings to enforce existing orders. *See* Utah Code Ann. § 30-3-3(2). As a result, the trial court was not required to consider Wife's need in awarding these fees and could, in its discretion, disregard Husband's ability to pay such fees. *See Connell*, 2010 UT App 139, ¶ 28 (citing Utah Code Ann. § 30-3-3(1), (2)).

---

[6]These hearings took place on November 3, 2008 (order to show cause hearing); January 12, 2009 (hearing requesting that the case be set for an evidentiary hearing regarding contempt issues related to Husband's failure to pay Wife's medical insurance); February 10, 2009 (evidentiary hearing on the contempt issues); June 8, 2009 (order to show cause hearing); and February 8, 2010 (order to show cause hearing).

¶26    With respect to the hearings to establish domestic orders or for other purposes,[7] the trial court's findings indicate that Wife was in need of attorney fees because her expenses exceeded her income each month. However, we have located no findings of the trial court with respect to Husband's ability to pay the fees. Thus, we remand so that the trial court may make appropriate findings.[8] *See Busche v. Busche*, 2012 UT App 16, ¶ 28, 272 P.3d 748 (remanding for further findings where "the court did not distinguish between fees incurred to enforce existing support orders . . . and those incurred in establishing a new order").

B.  On Appeal

¶27    Wife also seeks attorney fees on appeal. "Generally, when the trial court awards fees in a domestic action to the party who then substantially prevails on appeal, fees will also be awarded to that party on appeal." *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 52, 176 P.3d 476 (internal quotation marks omitted). Although we remand for further findings on the trial court's award of some attorney fees, Wife has substantially prevailed as to all other issues on appeal. *See Leppert v. Leppert*, 2009 UT App 10, ¶ 29, 200 P.3d 223 (holding that even though Husband prevailed on one issue, because Wife had substantially prevailed on all other issues, she was entitled to attorney fees on appeal). Therefore, if on remand the trial court determines that Wife is entitled to all of the attorney fees initially awarded, the trial court should award Wife all of her

---

[7]These hearings took place on June 9, 2008 (motion for temporary relief); September 24, 2009 (stipulation to a temporary order); and June 14, 2010 (scheduling conference).

[8]For the first time on appeal, Husband challenges the trial court's award of attorney fees because "there are no findings" regarding their reasonableness. Although Husband argued that Wife's attorney fees were not reasonable before the trial court entered its ruling, Husband never alerted the trial court that its findings of facts were inadequate due to its failure to address facts related to the reasonableness of the fees. Thus, Husband failed to present this issue "in such a way that the trial court ha[d] an opportunity to rule on" it, and, therefore, it is not preserved for appeal. *See 438 Main Street v. Easy Heat, Inc.*, 2004 UT 72, ¶¶ 51, 54, 99 P.3d 801 (noting that a challenge to the trial court's ruling, because it was not supported by the evidence, did not preserve the appellant's argument that the findings were insufficiently detailed).

reasonable attorney fees on appeal. *See Grgich v. Grgich*, 2011 UT App 214, ¶ 21, 262 P.3d 418 (citing *Williamson v. Williamson*, 1999 UT App 219, ¶ 14, 983 P.2d 1103). In the alternative, if the trial court determines that Husband does not have the ability to pay Wife's attorney fees under Utah Code section 30-3-3(1), the trial court should "take into account the fact that [Wife] was only granted partial attorney fees at trial," when awarding her fees on appeal. *See Elman v. Elman*, 2002 UT App 83, ¶ 43, 45 P.3d 176 (alteration in original) (internal quotation marks omitted).

¶28    In summary, we affirm the trial court's ruling holding Husband in contempt due to Husband's repeated failure to pay Wife's health insurance premium. However, we determine that the trial court did not abuse its discretion when it refused to hold Wife in contempt because there was no order requiring that she file for bankruptcy protection. Additionally, we affirm the trial court's award to Wife of her attorney fees incurred to enforce prior orders of the trial court, but remand for further findings regarding Wife's attorney fees with respect to all other hearings.

¶29    Affirmed in part and remanded in part.

_____
Carolyn B. McHugh,
Presiding Judge

-----

¶30    WE CONCUR:

_____
Stephen L. Roth, Judge

_____

Michele M. Christiansen, Judge