2013 UT App 8

# THE UTAH COURT OF APPEALS

UTAH TELECOMMUNICATION OPEN INFRASTRUCTURE AGENCY,
aka UTOPIA,

*Plaintiff and Appellee,*

*v.*

CHRIS HOGAN,

*Defendant and Appellant.*

Opinion
No. 20110629-CA
Filed January 10, 2013

Third District, Salt Lake Department
The Honorable Joseph C. Fratto Jr.
No. 110909414

Steve S. Christensen, Craig L. Pankratz, and Samuel J. Sorensen,
Attorneys for Appellant
Eric C. Olson and Stephen W. Geary, Attorneys for Appellee

JUDGE CAROLYN B. MCHUGH authored this Opinion,
in which JUDGES JAMES Z. DAVIS
and WILLIAM A. THORNE JR. concurred.

McHUGH, Judge:

¶1      Chris Hogan appeals from the trial court's denial of his motion for attorney fees and its refusal to hold Utah Telecommunication Open Infrastructure Agency (UTOPIA) in contempt. We affirm in part, and reverse and remand in part.

BACKGROUND

¶2     UTOPIA and Hogan entered into a two-year Agreement for Professional Services (the Agreement) on May 12, 2009.[1] The Agreement outlined the scope of Hogan's duties and included a confidentiality provision, stating, "[Hogan] understands that the Services performed for UTOPIA are confidential and [Hogan] agrees to maintain such confidentiality. This [provision] shall survive the termination of this Agreement." On March 17, 2011, UTOPIA informed Hogan that it did not intend to renew the Agreement and offered to pay him the remaining amount due "with no further services rendered." Hogan responded on March 21, 2011, with a brief letter from his attorney attached to a draft complaint alleging breach of contract, breach of the covenant of good faith and fair dealing, wrongful discharge, and promissory estoppel. On March 24, 2011, UTOPIA provided Hogan with a formal "Notice of Expiration of Professional Services Agreement." The same day, Hogan made a settlement proposal stating that he was "acutely aware that public scrutiny spurred by members of the media threatens to destroy the work of UTOPIA. Although his lawsuit may be necessary to redress Mr. Hogan's rights under the contract . . . he would prefer to resolve this case without public scrutiny." The letter included a list of Hogan's specific grievances and "a list of . . . requirements" to be met in order to avoid a lawsuit.

¶3     In a letter responding to the settlement proposal, UTOPIA described Hogan's settlement conditions as "extravagant de-mands" and stated, "What Mr. Hogan attempts in proposing this extravagant course, at least as he frames the matter and perceives UTOPIA's interests and vulnerabilities, go by the names of 'black-mail' and 'extortion.'" UTOPIA also stated its intent to enforce the

_____

1. Although the Agreement inconsistently indicates that it "will continue for twelve (24) months," the parties do not dispute that the contract was expected to continue for two years.

Agreement's confidentiality provision. Hogan's next correspondence states that he did not intend to "extort or blackmail UTOPIA" but that if his "objectives" were not met, he would file a lawsuit to "protect the public trust by exposing what he believes is mismanagement." He further predicted that "[i]f the media, which has already been critical of UTOPIA, learns of the lawsuit, it will recommence its assault on UTOPIA."

¶4    On April 18, 2011, UTOPIA filed a complaint seeking to permanently enjoin "Hogan from disclosing any information obtained during the course of rendering services under the Agreement." In addition, UTOPIA requested a declaration that the Agreement would expire on May 13, 2011, and that UTOPIA had no obligation to renew the Agreement or to compensate Hogan beyond the expiration date. UTOPIA simultaneously filed an ex parte motion seeking a temporary restraining order and a preliminary injunction to prevent Hogan from releasing confidential information during the pendency of the action. UTOPIA also filed a motion to seal the record of the litigation.[2] In a supporting affidavit, UTOPIA indicated that "Hogan has threatened to publicly disclose this confidential information; [that] Hogan has already compiled this information in the form of the letters and draft complaint"; and that UTOPIA would be irreparably harmed if Hogan were to release the information.

¶5    Following an ex parte hearing on April 18, 2011, the trial court issued a temporary restraining order and an order sealing the record of the case and scheduled an evidentiary hearing to determine whether to issue a preliminary injunction. One day before the evidentiary hearing, Hogan filed a lawsuit against UTOPIA in federal court, which described Hogan's allegations of mismanagement. The trial court proceeded with the scheduled

---

2.  UTOPIA attached as exhibits to the complaint the Agreement and communications between UTOPIA and Hogan, including Hogan's draft complaint.

evidentiary hearing and declined to issue the preliminary injunction. In denying the injunction, the trial court stated, "It appears that all of the information that [Hogan] . . . threatened to disclose, is not prevented by this contractual provision, " that it would be adverse to the public interest to enjoin Hogan from filing a claim, and that UTOPIA would be unlikely to prevail on the merits of its complaint. After declining to issue the preliminary injunction, the trial court set a subsequent hearing to determine whether to unseal the record. Prior to that scheduled hearing, the parties stipulated that the record could be unsealed. However, no order unsealing the record was entered at that time. On April 27, UTOPIA filed a motion to dismiss its complaint and to withdraw its motion to seal the record, which the trial court had previously granted. Meanwhile, Hogan filed a motion for $17,246 in attorney fees with a supporting affidavit. He also submitted a motion to strike UTOPIA's notice of dismissal in order to keep the attorney fee issue open.

¶6　　On May 1, 2011, KSL.com published an article that quoted UTOPIA's response to Hogan's settlement offer in which UTOPIA had characterized Hogan's settlement demands as "extortion" and "blackmail." The article opened with the statement, "Chris Hogan . . . is being accused of extortion in court documents . . . ." The letter, which UTOPIA had submitted to the court as Exhibit E, remained under seal at the time, pursuant to the trial court's order. On May 8, 2011, Hogan filed a motion to seal Exhibit E, but to otherwise unseal the record. In support, Hogan attached an affidavit in which he claimed that UTOPIA had leaked sealed documents, including Exhibit E, to the author of the KSL.com article[3] and to the author of another article published on May 2, 2011, on www.fiercetelecom.com. Hogan alleged that both articles "misrepresent[ed] facts, inaccurately attribute[d] statements to

---

3. The affidavit identifies the author as Richard Burwash, which Hogan later discovered was a pseudonym under which West Valley City Mayor Mike Winder had written the article.

[Hogan], and misquote[d] statements made in documents which were filed with UTOPIA's pleadings." Hogan subsequently filed a Motion for Order to Show Cause (the Motion), arguing that UTOPIA should be held in contempt for releasing the sealed documents to third parties. In a supporting affidavit, Hogan stated that similar allegations of extortion had appeared in other articles. He also asserted, "[UTOPIA] appears to have aggressively mounted a negative campaign against me in the media using this sealed information. . . . This egregious smear campaign will likely make it impossible to find work for the foreseeable future."

¶7     Following a May 16, 2011 hearing, the trial court ordered that the entire record be unsealed, including Exhibit E. The trial court also struck from the record as immaterial the two paragraphs in Exhibit E relating to blackmail and extortion (the Stricken Language) under rule 10(h) of the Utah Rules of Civil Procedure.

¶8     Thereafter, at a June 13, 2011 hearing on the issues of contempt and attorney fees, Hogan argued that UTOPIA should be held in contempt because it had "unilaterally . . . leaked" the Stricken Language, knowing that the record was sealed. UTOPIA asserted that it had released the Stricken Language only after it had withdrawn its motion to seal the record and after Hogan had filed the federal complaint which "quotes from and characterizes the State action." The trial court declined to hold UTOPIA in contempt.

¶9     Hogan next argued that he was entitled to attorney fees both because the complaint was brought without merit and in bad faith and because he had been wrongfully enjoined. The trial court declined to award Hogan attorney fees because "the inference . . . that the prevailing party is entitled to their attorney's fees is not merited." The trial court further ruled that the action was not frivolous or brought in bad faith because it was "an action based on contract." Hogan now appeals.

ISSUES AND STANDARDS OF REVIEW

¶10    Hogan first claims that he is entitled to attorney fees under section 78B-5-825 of the Utah Code and under rule 65A of the Utah Rules of Civil Procedure. Generally, "'[w]hether attorney fees are recoverable in an action is a question of law, which we review for correctness.'" *Anderson & Karrenberg v. Warnick*, 2012 UT App 275, ¶ 8, 289 P.3d 600 (quoting *Valcarce v. Fitzgerald*, 961 P.2d 305, 315 (Utah 1998)). When reviewing a denial of fees under section 78B-5-825, "[t]he 'without merit' determination is a question of law, and therefore we review it for correctness." *Jeschke v. Willis*, 811 P.2d 202, 203–04 (Utah Ct. App. 1991) (interpreting Utah Code Ann. § 78-27-56 (Michie Supp. 1990) (current version at *id.* § 78B-5-825 (LexisNexis 2012))). "A finding of bad faith is a question of fact and is reviewed by this court under the 'clearly erroneous' standard." *Id.* at 204.

¶11    Hogan next challenges the trial court's refusal to hold UTOPIA in contempt. "On review of both criminal and civil proceedings, we accept the trial court's findings of fact unless they are clearly erroneous." *Von Hake v. Thomas*, 759 P.2d 1162, 1172 (Utah 1988), *superseded on other grounds as stated in State v. Hurst*, 821 P.2d 467, 470 (Utah Ct. App. 1991). UTOPIA argues that Hogan lacks standing to challenge the trial court's decision not to hold UTOPIA in contempt. Standing is a jurisdictional question, which "we have an 'independent obligation' to resolve." *Summer v. Summer*, 2012 UT App 159, ¶ 12, 280 P.3d 451 (mem.) (quoting *In re Adoption of Baby E.Z.*, 2011 UT 38, ¶ 36, 266 P.3d 702).

ANALYSIS

I. Attorney Fees

¶12    Hogan challenges the trial court's denial of his request for attorney fees under two separate theories. First, Hogan claims he is entitled to attorney fees under section 78B-5-825 of the Utah

Code, alleging that UTOPIA's request for a preliminary injunction was frivolous and brought in bad faith. *See* Utah Code Ann. § 78B-5-825 (LexisNexis 2012). Hogan also contends that the trial court erred in denying him attorney fees incurred to defend against the preliminary injunction under rule 65A of the Utah Rules of Civil Procedure.

A. Attorney Fees Under Section 78B-5-825

¶13 "[T]he court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit *and* not brought or asserted in good faith."[4] Utah Code Ann. § 78B-5-825(1) (LexisNexis 2012) (emphasis added). The bad faith determination must be made independently of the without merit determination.[5] *Still Standing Stable, LLC v. Allen*, 2005 UT 46, ¶ 12, 122 P.3d 556. Thus, in order to succeed on his claim, Hogan must first demonstrate that the trial court erred in its conclusion that UTOPIA's complaint was not without merit.

¶14 "A claim is without merit if it is 'frivolous,' is 'of little weight or importance having no basis in law or fact,' or 'clearly [lacks a] legal basis for recovery.'" *Wardley Better Homes & Gardens v. Cannon*, 2002 UT 99, ¶ 30, 61 P.3d 1009 (alteration in original) (quoting *Cady v. Johnson*, 671 P.2d 149, 151 (Utah 1983)). The trial

---

4. UTOPIA argues that because it voluntarily dismissed its complaint, rule 41(a)(1) of the Utah Rules of Civil Procedure precludes a prevailing party determination. We need not reach this issue because we conclude that the trial court did not err in its determination that the complaint was not frivolous. *See infra* ¶¶ 17–18.

5. Although it differentiated between the standards for good faith and merit, the trial court's determination of the action's merit was based on the same reasoning as its determination that UTOPIA did not bring the action in bad faith.

court concluded that because UTOPIA had relied on the Agreement's confidentiality provision, the action was based on the express terms of the contract and was therefore not without merit. Hogan argues that this conclusion is erroneous because UTOPIA's claim for specific performance, which sought to enforce the confidentiality provision, violated his constitutional rights. Hogan further asserts that the information UTOPIA sought to protect was part of the public record, that the confidentiality clause was unenforceable, and that UTOPIA presented no facts in support of its argument that Hogan had threatened to disclose confidential information. UTOPIA counters that Hogan's arguments go to the ultimate outcome of the suit, not whether the action was based in law or fact.

¶15　Many of Hogan's arguments that UTOPIA's claim for specific performance lacked merit are focused on UTOPIA's alleged "purpose" of interfering with his right to file suit. While the "purpose" behind UTOPIA's action is relevant to whether UTOPIA acted in bad faith, it is not relevant to whether the action lacked merit. *See Gallegos v. Lloyd*, 2008 UT App 40, ¶ 15, 178 P.3d 922 ("A finding of bad faith must be based on at least one of the following three factors: '(i) The party lacked an honest belief in the propriety of the activities in question; (ii) the party intended to take unconscionable advantage of others; or (iii) the party intended to or acted with the knowledge that the activities in question would hinder, delay, or defraud others.'" (quoting *Valcarce v. Fitzgerald*, 961 P.2d 305, 316 (Utah 1998))).

¶16　In contrast, Hogan's argument that UTOPIA clearly lacked a legal basis for recovery because the Agreement was unenforceable does challenge the merit of the action. Hogan asserts that the information UTOPIA sought to protect was available to the public under state law and that as a result, UTOPIA could not enforce the

confidentiality provision of the Agreement.[6] While Hogan asserts that this should have been obvious to UTOPIA, the only authority he cites in favor of the proposition that the contract is unenforceable under state law is from Pennsylvania. The absence of Utah law on this point supports the trial court's refusal to award attorney fees. *Cf. Matthews v. Olympus Constr., LC* (*In re Olympus Const., LC*), 2009 UT 29, ¶ 31, 215 P.3d 129 (declining to find that a claim was frivolous where the challenge to the statutory authority to raise the claim was an issue of first impression). While the trial court ruled that UTOPIA was not likely to prevail on the merits, it did not conclude that the action had no basis in law or fact. Contrary to Hogan's suggestion, there is nothing inconsistent in those positions. Under the Agreement, Hogan agreed that "the Services performed for UTOPIA are confidential" and he agreed "to maintain such confidentiality."[7] *See* Utah Code Ann. § 63G-2-305 (LexisNexis Supp. 2012) (enumerating several records as "protected" and therefore exempt from the presumption that government records are public). The trial court correctly noted that its ultimate ruling against UTOPIA did not change the fact that UTOPIA's initial action against Hogan was based on a reasonable interpretation of the Agreement and therefore had a basis in contract.

¶17   Hogan additionally argues that UTOPIA's claim for declaratory relief lacked merit because the expiration of the Agreement was not in dispute and because he "never requested to

---

6.   The Government Records Access and Management Act (GRAMA) is Utah's open records act that makes government records available to the public by written request, unless exempted. *See* Utah Code Ann. §§ 63G-2-101 to -901 (LexisNexis 2011 & Supp. 2012).

7.   The trial court made no formal ruling on the merits because UTOPIA dismissed its complaint after the trial court declined to issue a preliminary injunction.

recover" beyond the expiration date. Although Hogan raised this argument to the trial court, it did not rule on this issue, instead basing its ruling on the contract underlying UTOPIA's claim for injunctive relief. Furthermore, UTOPIA correctly notes that Hogan's draft complaint seeks to extend the Agreement through a claim of promissory estoppel. Specifically, the draft complaint alleges that UTOPIA "led Hogan to understand that the contract would be renewed" for another year and that he was entitled to $138,000 in anticipated wages. Accordingly, the claim for declaratory relief was justified by Hogan's draft complaint.

¶18    Because the trial court was correct that UTOPIA's action had merit, we need not consider whether the action was brought in bad faith. *See* Utah Code Ann. § 78B-5-825 (LexisNexis 2012) (requiring that an action be both filed in bad faith and without merit before attorney fees may be assessed). Hogan's claim for attorney fees under section 78B-5-825 fails because UTOPIA's action was not both without merit and brought in bad faith. *See id.*

B. Attorney Fees Under Rule 65A

¶19    Alternatively, Hogan argues that he is entitled to the attorney fees incurred in defending against the preliminary injunction under rule 65A of the Utah Rules of Civil Procedure. The rule provides,

> The amount of security [generally provided to secure a temporary restraining order or preliminary injunction] shall not establish or limit the amount of costs, including reasonable attorney fees incurred in connection with the restraining order or preliminary injunction, or damages that may be awarded to a party who is found to

> have been wrongfully restrained or enjoined.

 Utah R. Civ. P. 65A(c)(2).

¶20    Hogan argues that the trial court erred in denying him fees under rule 65A because he successfully defended against the preliminary injunction at a hearing on the merits of the injunction. His affidavit supporting the motion for attorney fees indicates that "$1,919.00 in attorney fees [were] related to the temporary restraining order" and "$4,825.00 . . . [were] related to the opposition to application for preliminary injunction, the hearing on the application[,] and preparation of the order on the hearing." In denying Hogan fees, the trial court stated that "the inference . . . that the prevailing party is entitled to their attorney's fees is not merited." UTOPIA concedes that, contrary to the trial court's ruling, Hogan is entitled to attorney fees "in theory" but argues that we should affirm because there was no actual harm to Hogan. Specifically, UTOPIA asserts that Hogan "failed to carry his burden of demonstrating what (if any) fees were actually recoverable."

¶21    "'If . . . it is found that the injunction was wrongfully issued, the enjoined party has an action for costs and damages incurred as a result of the wrongfully issued injunction.'" *IKON Office Solutions, Inc. v. Crook*, 2000 UT App 217, ¶ 12, 6 P.3d 1143 (omission in original) (emphasis omitted) (quoting *Mountain States Tel. & Tel. Co. v. Atkin, Wright & Miles, Chartered*, 681 P.2d 1258, 1262 (Utah 1984)). "An injunction is wrongfully issued and recovery on the bond is permissible if it is finally determined that the applicant was not entitled to the injunction." *Mountain States*, 681 P.2d at 1262. Where, as here, a temporary restraining order is issued and a party successfully "fight[s] the wrongful enjoinder by preventing it from continuing as a preliminary injunction, . . . the temporary restraining order will dissolve, either by its own terms or by order of the court, and the party will have successfully eliminated the wrongful enjoinder." *See IKON Office Solutions*, 2000 UT App 217, ¶ 13. Thus, "the attorney fees and costs that a party incurs in this type of

defense are the result of the wrongful injunction and that party may be awarded attorney fees and costs."[8] *Id.*

¶22    However, wrongfully enjoined parties are entitled to only "those attorney fees which would not have been incurred *but for* the application for, and issuance of, the preliminary injunction. Fees which would have been incurred anyway, in the course of [the underlying litigation, ] are not recoverable under Rule 65A." *Tholen v. Sandy City*, 849 P.2d 592, 597 (Utah Ct. App. 1993) (citation and internal quotation marks omitted); *see also Beard v. Dugdale*, 741 P.2d 968, 969 (Utah Ct. App. 1987) (mem.) ("[T]he award of attorney fees should have been limited only to the hours spent by respondents' counsel as a result of the wrongfully issued injunction."). Thus, "[t]he  fees a party incurs in showing that its opponent is unlikely to succeed on the merits [of the underlying lawsuit] will typically be fees that the party would have incurred in litigating the underlying lawsuit." *IKON Office Solutions*, 2000 UT App 217, ¶ 20. Although

> in most cases, opposition to enjoinder will include showing that the moving party is unlikely to prevail on the underlying claim, fees and costs may be incurred in addressing the other grounds for injunctive relief set out in

---

8. We decline to consider UTOPIA's argument that fees are not merited because its "conduct in seeking an expedited resolution of this issue likely saved both sides the substantial attorney fees incurred in lengthy litigation." Because rule 65A of the Utah Rules of Civil Procedure includes no requirement of a trial on the merits and UTOPIA has cited no authority to support this proposition, we do not consider this argument. *See* Utah R. App. P. 24(a)(9), (b) ("The argument shall contain the contentions and reasons of the [appellee] with respect to the issues presented . . . with citations to the authorities, statutes, and parts of the record relied on.").

> Rule 65A(e), or any other matters not
> incurred in litigating the underlying
> lawsuit.

*Id.* ¶ 21 (citation and internal quotation marks omitted); *see also* Utah R. Civ. P. 65A(e) (stating the grounds required for issuing a preliminary injunction).

¶23    UTOPIA argues that we should affirm the trial court's denial of fees because "the entire evidentiary hearing [on the merits of the preliminary injunction] consisted of evidence that otherwise would have been elicited in a trial upon the merits [of the underlying lawsuit]." Additionally, UTOPIA claims that Hogan did not "apportion or separate out the recoverable fees from the nonrecoverable ones." *See Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 36, 94 P.3d 193. Contrary to UTOPIA's assertion, Hogan filed an affidavit that allocates attorney fees among specific tasks. Because the trial court ruled that Hogan was not entitled to any fees, it did not consider the amount of attorney fees available under rule 65A. We therefore remand to the trial court to determine the amount of attorney fees, if any, that should be awarded to Hogan under rule 65A of the Utah Rules of Civil Procedure.

¶24    Hogan also seeks attorney fees on appeal. Hogan is entitled to attorney fees on appeal only if he is awarded attorney fees in the trial court. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998). If, on remand, the trial court determines that Hogan is entitled to attorney fees under rule 65A of the Utah Rules of Civil Procedure, the trial court should also determine the "'fees [Hogan] reasonably incurred on appeal'" for the issues on which he prevailed. *See id.* (quoting *Utah Dep't of Soc. Servs. v. Adams*, 806 P.2d 1193, 1197 (Utah Ct. App. 1991)). If the trial court determines that Hogan is entitled to attorney fees, "some adjustment may be necessary so that [he does] not recover fees attributable to issues on which [he] did not prevail." *Id.* We therefore remand to the trial court for consideration of whether Hogan is entitled to attorney fees under

rule 65A and, if so, for a calculation of fees that Hogan reasonably incurred on appeal of that issue.

## II. Contempt

¶25    Next, Hogan challenges the trial court's refusal to hold UTOPIA in contempt for releasing the Stricken Language to the media while it was under seal. *See* Utah Code Ann. § 78B-6-301(5) (LexisNexis 2012) (stating that "disobedience of any lawful judgment, order or process of the court" is "contempt[] of the authority of the court"). The trial court ruled that no evidentiary hearing was needed to determine whether UTOPIA had acted in contempt because the issue had become moot when the court unsealed the record and because the order to seal related only to the court clerk. Hogan argues that the trial court's reasoning was erroneous and that we should remand for the trial court to decide the matter "under a proper legal standard."

¶26    As a threshold matter, UTOPIA argues that we should decline to address this argument because Hogan lacks standing to challenge the trial court's decision. "[I]n Utah, as in the federal system, standing is a jurisdictional requirement." *Brown v. Division of Water Rights*, 2010 UT 14, ¶ 12, 228 P.3d 747. We must therefore determine whether Hogan has standing to challenge the trial court's contempt decision.

> "On appeal, a party whose standing is challenged must show that he or she had standing under the traditional test in the original proceeding before the district court. In addition, an appellant generally must show both that he or she was a party or privy to the action below and that he or she is aggrieved by that court's judgment."

*Chen v. Stewart*, 2005 UT 68, ¶ 50, 123 P.3d 416 (quoting *Society of Prof'l Journalists v. Bullock*, 743 P.2d 1166, 1171 (Utah 1987)). The traditional standing test requires a party to "'allege that he or she has suffered or will imminently suffer an injury that is fairly traceable to the conduct at issue such that a favorable decision is likely to redress the injury.'" *Id.* (quoting *Provo City Corp. v. Thompson*, 2004 UT 14, ¶ 9, 86 P.3d 735).

¶27    Because Hogan appeals the trial court's contempt determination, the conduct relevant to Hogan's standing is the trial court's refusal to hold UTOPIA in contempt, not UTOPIA's release of sealed information to the media. *See Summer v. Summer*, 2012 UT App 159, ¶ 13, 280 P.3d 451 (mem.) (citing *Chen*, 2005 UT 68, ¶¶ 48–54). Thus, "[i]n determining whether [Hogan] 'will imminently suffer an injury that is fairly traceable' to the trial court's decision to not hold [UTOPIA] in contempt, we must consider the effect that the contempt order will have on [Hogan]." *See id.* ¶ 14 (quoting *Chen*, 2005 UT 68, ¶ 50).

¶28    In doing so, we first consider the nature of the contempt order. "A contempt order is criminal if its purpose is to vindicate the court's authority, as by punishing an individual for disobeying an order, even if the order arises from civil proceedings." *Von Hake v. Thomas*, 759 P.2d 1162, 1168 (Utah 1988), *superseded on other grounds as stated in State v. Hurst*, 821 P.2d 467, 470 (Utah Ct. App. 1991). In contrast, "[a] contempt order is civil if it has a remedial purpose, either to coerce an individual to comply with a court order given for the benefit of another party or to compensate an aggrieved party for injuries resulting from the failure to comply with an order." *Id.* However, when reviewing the nature of a contempt order, we look not only to its stated purpose but to the character of the sanction as well. *See generally International Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827–28 (1994).

¶29    Neither the trial court, nor either party, has addressed whether the contempt order would have been civil or criminal in nature. Nonetheless, the distinction between civil and criminal

contempt is relevant to our analysis because "a party will generally not have standing to appeal a trial court's failure to hold another party in criminal contempt because the only proper objective of criminal contempt is as punishment to vindicate the authority of a court." *Summer*, 2012 UT App 159, ¶ 14 (citation and internal quotation marks omitted). On the other hand, "where a party challenges a court's failure to hold another party in civil contempt . . . standing is dependent on whether the failure to do so directly affects the moving party's interests in the litigation." *Id.* Accordingly, we must first determine the nature of the contempt proceedings.

¶30   In the Motion and at the hearing, Hogan's argument emphasized that UTOPIA should be held in contempt as punishment for its past conduct of "disclosing documents to third parties that are currently under seal." Hogan's affidavit supporting the Motion states that UTOPIA's alleged media campaign against him would likely result in rendering him unable to find employment. The Motion calls for "sanctions" against UTOPIA, "including but not limited to [Hogan's] attorney's fees incurred in this action." At the hearing, Hogan argued that UTOPIA's conduct "caused damage, but that's not necessarily the point of [the] hearing. The point . . . is that they had an order. They knew the order. They didn't have to go out and leak the information, but they did." Hogan asserted that the court should award attorney fees "as the sanction for the contempt." At oral argument, Hogan again argued that attorney fees should have been awarded "to punish [UTOPIA] for violating the court order."

¶31   The only indication that the Motion sought civil contempt was that Hogan's requested relief was for attorney fees. Utah's statutory scheme allows a court discretion to sanction a party held in contempt with a fine or jail sentence. *See* Utah Code Ann. § 78B-6-310 (LexisNexis 2012). Additionally, if the contempt causes "an actual loss or injury to a party . . . the court, in lieu of or in addition to the fine or imprisonment, may order the person proceeded against to pay the party aggrieved a sum of money sufficient to

indemnify him and to satisfy his costs and expenses." *See id.* § 78B-6-311. The "costs and expenses" described in this section include "the attorney fees the damaged party incurred." *See Foreman v. Foreman*, 176 P.2d 144, 151 (Utah 1946) (interpreting Utah Code Ann. § 104-45-11 (Callaghan & Co. 1943) (current version at *id.* § 78B-6-311 (LexisNexis 2012))).

¶32    Requests for attorney fees, when made under section 78B-6-311 of the Utah Code, are considered civil in nature. *See Davidson v. Munsey*, 80 P. 743, 745 (Utah 1905) (holding that actions seeking attorney fees under the predecessor to section 78B-6-311 were civil in nature (interpreting Rev. St. 1898 § 3368 (Young, Smith & Lee 1898) (current version at Utah Code Ann. § 78B-6-311 (LexisNexis 2012)))). However, Hogan did not request his fees under this section in the trial court,[9] and Utah courts have not squarely addressed whether attorney fees awarded as a contempt sanction necessarily indicate that the contempt proceeding is civil, rather than criminal. *Cf. In re Whitmore*, 35 P. 524, 526 (Utah 1894) (deciding, under territorial law, that a court could impose costs in addition to a fine for criminal contempt); *Dickman Family Props., Inc. v. White*, 2012 UT App 299, ¶¶ 10, 13 (mem.) (indicating that a "request for an award of attorney fees" suggests that a "contempt proceeding might have a civil purpose," but declining to reach the unpreserved issue of whether the trial court abused its discretion

---

9. Hogan also argues, for the first time on appeal, that he is entitled to attorney fees for prosecuting the order to show cause. *See* Utah Code Ann. § 78B-6-311 (LexisNexis 2012) (allowing an award of "costs and expenses" to a party who suffers "an actual loss or injury" as a result of another's contempt). We do not consider this statutory argument for attorney fees because Hogan did not raise it before the trial court. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 ("[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." (alterations in original) (citation and internal quotation marks omitted)).

by classifying a contempt action as criminal). Indeed, it is unclear whether attorney fees are authorized as a contempt sanction when not awarded as compensation for an actual loss or injury to a party. *See Mellor v. Cook*, 597 P.2d 882, 884 (Utah 1979) ("[W]e are aware of no provision authorizing an additional penalty of attorney's fees." (interpreting Utah Code Ann. § 78-32-10 (Michie 1987) (current version at *id.* § 78B-6-310 (LexisNexis 2012)))).

¶33    Except for his specific claim for attorney fees as a sanction, Hogan's request, and the relief that would have been granted, appear to be criminal in nature. Hogan requested an order "to vindicate the court's authority," which he acknowledged would not necessarily result in the enforcement of the civil judgment. *Cf. Von Hake v. Thomas*, 759 P.2d 1162, 1168 (Utah 1988), *superseded on other grounds as stated in State v. Hurst*, 821 P.2d 467, 470 (Utah Ct. App. 1991). Thus, if the trial court had held UTOPIA in contempt, it would not have been to coerce UTOPIA to obey the order sealing the record, which had since been lifted, nor would it have served to compensate Hogan for any "actual loss or injury" caused by UTOPIA's conduct. Instead, a contempt finding would have allowed the trial court to sanction UTOPIA for past conduct and to vindicate the court's own authority. As a result, the contempt proceedings were criminal in nature and Hogan lacks standing to challenge the trial court's ruling on appeal.


CONCLUSION

¶34    We affirm the trial court's denial of Hogan's motion for attorney fees under section 78B-5-825 because the trial court did not err in determining that UTOPIA did not file its action without merit. Additionally, Hogan lacks standing to challenge the trial court's refusal to hold UTOPIA in contempt. Finally, we reverse the trial court's determination that Hogan was not entitled to attorney fees under rule 65A of the Utah Rules of Civil Procedure. We remand on that issue for further proceedings consistent with this opinion.

¶35    Affirmed in part; reversed and remanded in part.

———————————