**2021 UT App 55**

# THE UTAH COURT OF APPEALS

TANNIN FUJA AND MEGAN FUJA,
Appellees,
*v.*
JOHN ADAMS AND JENNIFER ADAMS,
Appellants.

Opinion
No. 20200009-CA
Filed May 27, 2021

Fourth District Court, Provo Department
The Honorable Derek P. Pullan
No. 190401270

Benson L. Hathaway and Ryan R. Beckstrom,
Attorneys for Appellants

Richard H. Reeve, Attorney for Appellees

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES JILL M. POHLMAN and DIANA HAGEN concurred.

HARRIS, Judge:

¶1　In this case, we are asked to decide whether a litigant claiming to have sustained damages because of a wrongfully issued injunction must assert a claim to such damages *before* the injunction is determined to have been improvidently granted. John and Jennifer Adams (the Adamses) claim to have sustained such damages, but they did not assert that claim until *after* the district court, in a two-day bench trial, determined that a preliminary injunction entered against them had been improvidently granted. The court dismissed the Adamses' damages claim as untimely, and they now appeal. We reverse.

BACKGROUND

¶2      The Adamses own a residential lot adjacent to property owned by Tannin and Megan Fuja (the Fujas). Both parcels are located in a subdivision that is subject to a set of recorded covenants, conditions, and restrictions (the CC&Rs). In July 2019, after obtaining a building permit from the relevant municipal authorities, the Adamses began building a house on their lot.

¶3      The Fujas believed that the Adamses' construction plans were not in compliance with the CC&Rs, and in August 2019 they filed suit to halt construction on the Adamses' lot. In their complaint, the Fujas asserted that they were entitled to "preliminary and permanent injunction[s] terminating construction of the [Adamses'] new residence and requiring complete compliance with the CC&Rs." The day after filing their complaint, the Fujas filed a motion asking the district court to enter a temporary restraining order (TRO) and a preliminary injunction forbidding further construction.

¶4      A few days later, the court issued a TRO, conditioned on the Fujas posting a $5,000 cash bond, which they did. The TRO required the Adamses to cease further construction for at least a few days until the court could hold a hearing to determine whether to issue a preliminary injunction. The Adamses did not appear at the eventual hearing, and the court heard testimony by proffer from the Fujas. At the conclusion of the hearing, the court entered a preliminary injunction forbidding the Adamses from "performing any work of construction or improvement" on their property until they had "satisfied the requirements" of the CC&Rs. The court did not require the Fujas to post any security in addition to the $5,000 already posted in connection with entry of the TRO.

¶5      Soon thereafter, the Adamses retained counsel and filed a motion asking the court to dissolve the preliminary injunction.

In that motion, the Adamses argued that the injunction had been incorrectly issued, but they did not assert any specific claim for damages associated with the injunction, stating only that if the injunction remained in place, construction would be delayed for the winter and that "[t]he winter's delay and exposure [would] . . . cause [them] economic hardship." The Adamses also answered the Fujas' complaint, but did not file a counterclaim.

¶6 Rather than adjudicating the motion to dissolve the injunction, the district court suggested putting the case on a fast track toward a bench trial of the Fujas' affirmative claims that the Adamses were violating the CC&Rs. The parties agreed, and the court scheduled trial for November 2019. In the weeks leading up to trial, the Adamses submitted initial disclosures in which they requested reasonable attorney fees and costs, but stated that they were "not at this time seek[ing] monetary damages," and that if they later changed their mind on that point they would supplement their disclosures. Later, the Adamses supplemented their disclosures, but that supplement did not include a request for monetary damages.

¶7 The case proceeded to a bench trial. Following the Adamses' opening argument, the court asked if they were "going to be seeking any damages, monetary damages for the delay" in the construction of their home, to which counsel responded, "They are not." Consistent with this representation, the Adamses did not present any evidence at trial that they had sustained monetary damages as a result of the injunction.

¶8 After hearing evidence for two days, followed by closing arguments, the court announced its decision by telephone conference. As later memorialized in a written ruling, the court ultimately found that the Adamses had violated the CC&Rs in at least one respect, but that the Adamses were "innocent parties" who had proceeded in good faith. Accordingly, the court conducted a "balancing of [the] equities," and concluded that

any "injury to the [Fujas could] be compensated in damages," and that an injunction was therefore unwarranted. On that basis, the court determined that the preliminary injunction had been improvidently granted, and that the Adamses had been "wrongfully restrained and enjoined."[1] The court vacated the injunction and ordered the Fujas to pay the Adamses' reasonable attorney fees and costs, concluding that, among other bases, rule 65A(c)(2) of the Utah Rules of Civil Procedure authorized the fee award. At the conclusion of the telephone conference, the court instructed the Adamses to file "an affidavit of fees and costs" within fourteen days.

¶9     Fourteen days later, the Adamses filed not only an affidavit of fees and costs, but also a declaration, accompanied by numerous exhibits, setting forth over $45,000 in damages they claimed to have sustained as a result of the injunction. The Fujas opposed this request on timeliness grounds, pointing out that the Adamses "did not seek damages in their responsive pleading, did not assert a counter-claim for monetary damages, and did not present evidence at the hearing for any of the damages claimed." The court quantified the Adamses' reasonable attorney fees as $72,427.50 and costs as $4,644.93, and entered judgment against the Fujas in those amounts. But it refused to award the Adamses any monetary damages

---

1. For purposes of this opinion, the term "wrongful injunction" refers simply to a temporary restraining order or preliminary injunction that is later determined, by the court that originally issued it, to have been improvidently or incorrectly granted. *See Mountain States Tel. & Tel. Co. v. Atkin, Wright, & Miles, Chartered*, 681 P.2d 1258, 1262 (Utah 1984) ("An injunction is wrongfully issued and recovery on the bond is permissible if it is finally determined that the applicant was not entitled to the injunction.").

associated with the wrongful injunction, concluding that the Adamses' "claim for damages arising from their being wrongfully enjoined [was] untimely."

## ISSUE AND STANDARD OF REVIEW

¶10    The Adamses appeal,[2] asserting that the district court erred by denying their claim for wrongful injunction damages, rooted in rule 65A(c), as untimely. "The interpretation of a rule of procedure is a question of law that we review for correctness." *Arbogast Family Trust v. River Crossings, LLC*, 2010 UT 40, ¶ 10, 238 P.3d 1035 (quotation simplified); *accord Total Restoration Inc. v. Merritt*, 2017 UT App 162, ¶ 6, 405 P.3d 778.

## ANALYSIS

¶11    The sole issue presented for our review—whether the Adamses' claim for wrongful injunction damages was timely presented—is governed by rule 65A(c) of the Utah Rules of Civil Procedure. That rule requires district courts to "condition issuance" of TROs and preliminary injunctions "on the giving of security by the applicant, in such sum and form as the court deems proper, unless it appears that none of the parties will incur or suffer costs, attorney fees or damage as the result of any wrongful order or injunction, or unless there exists some other

---

2. The Fujas were the first to file a notice of appeal, challenging the district court's ruling on the merits as well as its order awarding attorney fees. The Adamses subsequently filed a cross-appeal, specifically challenging the district court's determination that their claim for wrongful injunction damages was untimely. Later, however, the Fujas voluntarily dismissed their appeal, leaving only the Adamses' cross-appeal for our consideration.

substantial reason for dispensing with the requirement of security." Utah R. Civ. P. 65A(c)(1). In this case, the district court required the Fujas to post a $5,000 cash bond prior to entry of the TRO, but it did not require additional security prior to entry of the preliminary injunction. Rule 65A(c) provides, however, that "[t]he amount of security shall not establish or limit the amount of costs, . . . reasonable attorney fees . . . , or damages that may be awarded to a party who is found to have been wrongfully restrained or enjoined." *Id.* R. 65A(c)(2).[3] Indeed, we have previously stated that, "if it is found that the injunction was wrongfully issued, the enjoined party has an action for costs and damages incurred as a result of the wrongfully issued injunction." *See Utah Telecomm. Open Infrastructure Agency v. Hogan*, 2013 UT App 8, ¶ 21, 294 P.3d 645 (quotation simplified).

---

3. Under common law principles, wrongful injunction damages were generally limited to the amount of the bond. *See W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers*, 461 U.S. 757, 770 n.14 (1983) (applying a common-law—as opposed to a rules-based—standard, and stating that a "party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond"); *cf.* 42 Am. Jur. 2d *Injunctions* § 313 (2021) (explaining that "a person is not liable in tort or under the common law for damages caused by a wrongful injunction," and that liability for such damages can be had only through a claim upon an injunction bond or for malicious prosecution (quotation simplified)). However, by its plain language, rule 65A(c)(2) operates to deviate from these common-law principles, and allows recovery of damages in excess of, and even in the absence of, an injunction bond. Indeed, in this case, the Fujas do not argue that the Adamses' damages claim, if timely filed, must be limited to $5,000.

¶12 Although rule 65A(c) clearly envisions that a party injured by a wrongful injunction will be able to claim attorney fees and damages, the rule has relatively little to say about how—and when—such a claim is to be pursued. What limited guidance the rule offers is given in the context of discussing the liability of a surety who has provided a bond,[4] and in that context the rule provides that "[t]he surety's liability may be enforced on motion without the necessity of an independent action." Utah R. Civ. P. 65A(c)(3). Our supreme court has stated that "[t]his language does not preclude a separate action on an injunction bond," and also "allows an action on the bond to be enforced in the action in which it is filed at the option of the enjoined party." *See Mountain States Tel. & Tel. Co. v. Atkin, Wright, & Miles, Chartered*, 681 P.2d 1258, 1264 (Utah 1984). In other words, at least in cases involving a third-party surety, rule

---

4. In some instances, litigants are able to satisfy the "security" requirements of various rules and statutes by "put[ting] up [their] own property." *Cf. In re Lockard*, 884 F.2d 1171, 1179 (9th Cir. 1989). But many litigants do not have sufficient financial resources to satisfy security requirements through use of their own assets, and therefore require the assistance of a third-party surety to post a bond on their behalf; in such situations, the litigant "interposes" a surety between itself and any subsequent claimants on the bond, and "the surety essentially agrees, in exchange for the [litigant]'s promise of indemnification" or other consideration, to pay any damages "out of the surety's own funds in an aggregate amount up to the limits of the bond." *See id.; see also U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 131 n.1 (2d Cir. 2014) (stating that federal rule 65(c) "employs the term 'security,' which includes bonds," and that, "[t]ypically, bonds securing [an injunction] are posted by a surety, while 'security' includes amounts deposited directly by the plaintiff into the court").

65A(c) by its terms gives a party aggrieved by a wrongful injunction a choice: it may file a separate lawsuit for damages, or it may seek recourse by motion in the same case in which the injunction was imposed. *See id.*

¶13    But this case does not involve a third-party surety. Therefore, the first question we must address is whether the procedure applicable in cases where a wrongfully enjoined party is seeking to recover damages from a surety—where the aggrieved party has the option of filing a separate lawsuit or addressing the matter by motion—is also applicable in cases where damages are sought directly from the litigant who obtained the wrongful injunction. We are unaware of any Utah case law addressing this question. But the analogous federal rule of civil procedure includes language substantially similar to that in Utah rule 65A(c)(3). *Compare* Fed. R. Civ. P. 65.1 (providing that a "security provider's liability may be enforced on motion without an independent action"), *with* Utah R. Civ. P. 65A(c)(3). In situations like this, where Utah authorities do not directly answer a rules-based question and there is a federal rule with similar language, we often look to federal authorities for guidance. *See State v. 736 N. Colo. St.*, 2005 UT 90, ¶ 10 n.4, 127 P.3d 693 (stating that, where "the state and federal rules are similar and few Utah cases deal with the rule in question," we "recognize[] the persuasiveness of federal interpretations" of that similar rule (quotation simplified)).

¶14    And federal authorities appear to be in agreement that, "[a]lthough the terms of Rule 65.1 apply only to sureties, . . . that rule's procedures" also apply "when imposing liability on a principal." *See Global NAPs, Inc. v. Verizon New Eng., Inc.*, 489 F.3d 13, 20 (1st Cir. 2007); *see also Coyne-Delany Co. v. Capital Dev. Board*, 717 F.2d 385, 391 (7th Cir. 1983) (stating that "Rule 65.1's summary procedure" is, "despite its wording[,] . . . applicable to the principal as well as the surety on the bond"); *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 916 F. Supp. 2d 501, 507

(S.D.N.Y. 2013) (stating that, "[a]lthough Rule 65.1 on its face applies only to a bond posted by a surety, it is well established that the Rule applies also to bonds posted by a principal"), *vacated and remanded on other grounds*, 775 F.3d 128 (2d Cir. 2014); 13 James William Moore et al., *Moore's Federal Practice* § 65.1.03 (3d ed. 2021) (stating that, "despite its narrow and literal wording, the summary procedure of Rule 65.1 is applicable to a principal as well as a surety on a bond"). Thus, even though the relevant language of the federal rule appears in a section that, on its face, discusses only claims involving sureties, courts consistently apply the procedures set forth in that rule also in instances where an aggrieved party seeks wrongful injunction damages from the litigant who bore the obligation to provide security. We therefore interpret the nearly identical provision from the Utah rule similarly, and conclude that—even in cases not involving sureties—a party seeking wrongful injunction damages under rule 65A(c) may choose to file a separate lawsuit, or it may seek recourse by motion in the underlying injunction case.[5]

¶15    The next question we must address concerns the issue of *when* an aggrieved party must state its claim for wrongful injunction damages, whether stated against the litigant or against a surety, and whether brought in the form of an independent action or a motion within the already-pending injunction case. In particular, we must determine whether such a claim must be made *prior to* the injunction being declared wrongful, or whether the aggrieved party may wait until *after* the injunction is declared wrongful to assert a claim for damages stemming from the injunction. Rule 65A, by its terms, provides no specific guidance on this question. The rule indicates only

---

5. We note that neither party to this appeal advances a contrary interpretation of Utah rule 65A(c).

that damages are not available until the injunction "is found to have been" wrongful, *see* Utah R. Civ. P. 65A(c)(2), and while that language is instructive,[6] it does not directly answer the question at hand. A prohibition on *recovery* of damages until after adjudication of wrongfulness does not necessarily imply freedom to wait to *state the claim* until after that adjudication.

¶16    But we have already answered this question, albeit in a slightly different context. In *Wright v. Westside Nursery*, 787 P.2d 508 (Utah Ct. App. 1990), a plaintiff obtained a preliminary injunction, and was required to post a bond to secure it. *Id.* at 510, 515–16. The plaintiff was ultimately successful at trial, and the court even "specifically affirmed" the injunction order in its final judgment. *Id.* at 511, 516. After trial was over, the plaintiff asked the trial court to "exonerate" the injunction bond—that is, to return the bond to the plaintiff and prevent any recovery

---

6. At least one federal court has noted as "important" the past-tense locution used by the drafters of rule 65(c) of the Federal Rules of Civil Procedure—the federal counterpart to Utah's rule 65A(c)(2)—in stating that wrongful injunction damages may be awarded to a party "'*found to have been* wrongfully enjoined or restrained.'" *See NCAA v. Governor of New Jersey*, 939 F.3d 597, 605 (3d Cir. 2019) (quoting Fed. R. Civ. P. 65(c)). The court observed that the rule's "use of a past tense verb phrase—found to have been—is important," and held that, "[b]ecause a court can only be certain of an enjoined party's rights after a case has been fully litigated," a determination of whether a party was "'wrongfully enjoined' can only be [made] after a final judgment on the merits." *Id.* at 605–06; *see also Scott v. Scott*, 2017 UT 66, ¶¶ 1, 24, 423 P.3d 1275 (stating that "[a] statutory reading that credits a verb's tense is not uncommon," and holding that the legislature's use of the verb "*is* should mean *is* and not *was* or *has been*").

against it—but the court refused. *Id.* at 511. On appeal, we held that the court should have granted the plaintiff's post-trial motion to exonerate the bond, once it was "finally determined that the injunction was proper." *Id.* at 516. We first noted the language of rule 65A(c)(2), which at the time—as quoted in our opinion—stated that claims for wrongful injunction damages are available only to parties that are "found to have been wrongfully enjoined or restrained."[7] *Id.* (quotation simplified). And we then stated that "[a] right of action on [an injunction] bond does not arise until the court dissolves the injunction or determines that the injunction should not have been granted." *Id.*

¶17 Our conclusion in *Wright* is also in keeping with the practical realities of the procedure set forth in rule 65A(c). As noted, that rule gives aggrieved parties a choice: they may either file an independent action, or file a motion within the underlying injunction case. In a procedural regime where filing an independent action remains an option, parties are, by definition, not required to litigate claims for wrongful injunction damages within the context of the already-pending injunction case. Indeed, we would not want parties filing premature lawsuits for wrongful injunction damages prior to a ruling, in the underlying

---

7. The relevant language from the current version of the rule is nearly identical to the relevant language from the 1990 version, as quoted in *Wright*; the only change is that the order of the terms "restrained" and "enjoined" was apparently switched. *Compare* Utah R. Civ. P. 65A(c)(2) (stating that damages are available to any "party who is found to have been wrongfully restrained or enjoined"), *with Wright v. Westside Nursery*, 787 P.2d 508, 516 (Utah Ct. App. 1990) (quoting the language of the rule then in effect, stating that damages are available to "any party who is found to have been wrongfully enjoined or restrained").

injunction case, that the injunction in question had in fact been improvidently granted. And if the "independent action" option need not be invoked until after a determination of wrongfulness, it would make little sense to require the "motion" option to be invoked prior to that point.

¶18     Moreover, our interpretation of Utah rule 65A(c) is, in this context, congruous with the interpretation given to analogous federal and state rules. *See* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2972 (3d ed. Oct. 2020 update) (stating that, under the federal rules, a motion for wrongful injunction damages "will not precede the final determination on the merits," and "[i]n the case of an injunction bond, the claim against the surety does not accrue until it is finally determined that plaintiff was not entitled to the restraining order or injunction, or until something occurs that is the equivalent of a decision on this question"); *see also Monroe Div., Litton Bus. Sys., Inc. v. De Bari*, 562 F.2d 30, 33 (10th Cir. 1977) (allowing a litigant to raise a claim for wrongful injunction damages *after* the determination of wrongfulness, stating that prior to that point "the claim for damages had not yet arisen"); *Phoenix Aviation, Inc. v. MNK Enters., Inc.*, 919 P.2d 348, 352 (Idaho 1996) (interpreting an analogous Idaho rule, and stating that a "motion for recovery on [an injunction] bond was . . . premature" when "the merits of the action had not yet been determined"); *Aetna Cas. & Surety Co. v. Bell*, 603 P.2d 692, 694 (Nev. 1979) (explaining that, "[g]enerally, in the case of an injunction bond, the claim against the surety does not accrue until it is finally determined that the plaintiff was not entitled to the restraining order or injunction"); *cf.* 42 Am. Jur. 2d *Injunctions* § 317 (2021) (stating that "liability [on the bond] does not arise, and a cause of action . . . does not accrue, until a final judgment . . . that the plaintiff was not entitled to the injunction or that the defendant was wrongfully enjoined" (quotation simplified)).

¶19 Ultimately, after examining the text of rule 65A(c), our statement in *Wright*, and analogous federal authorities, we hold that a claim for wrongful injunction damages may be stated, for the first time, after a court has declared the injunction wrongful, and that such a claim is not subject to dismissal on timeliness grounds solely because it was not articulated sooner.

¶20 The Fujas resist this conclusion on two grounds. First, they call our attention to *Fillmore City v. Reeve*, 571 P.2d 1316 (Utah 1977), a case in which our supreme court stated that the opposing party in any claim for wrongful injunction damages is entitled to "some notice and an opportunity to" respond to the claim. *Id.* at 1318. But this statement appears to be tied to procedural due process concerns regarding the opposing party, and our holding today is not inconsistent with basic principles of procedural due process. Of course a respondent in any claim for wrongful injunction damages is entitled to notice and an opportunity to be heard in response. But such opportunities can easily be afforded to a respondent, even if the claim is not made until after the court determines that the injunction was improvidently granted. Certainly, if the claim for wrongful injunction damages is filed in a separate action, the defendant will be entitled to all procedure that the rules afford. But even if the claim is brought by motion in the pending case, the respondent can still be afforded the opportunity to fully respond and appropriately investigate the claim. Our district courts are required to afford litigants similar opportunities in various types of post-judgment proceedings, including proceedings aimed at quantifying attorney fee awards. *See, e.g.*, Utah R. Civ. P. 64(e)(1), (2) (allowing courts, in post-judgment proceedings, to join as a defendant any person claiming an interest in property upon which a judgment creditor wishes to execute, and stating that defendants so joined "shall answer within 14 days" and may "set[] forth any claim or defense"); *id.* R. 73 (discussing quantification of attorney fee awards and the responding party's

ability to "contest[] the judgment by presenting at a hearing either evidence or argument"); *see also Barker v. Utah Public Service Comm'n*, 970 P.2d 702, 712 (Utah 1998) ("A court must base attorney fee awards on the evidence and support them by findings of fact."). On remand, the Fujas should be given an opportunity to respond to the Adamses' claim for wrongful injunction damages, and it will be up to the district court to consider, among other things, whether and to what extent discovery on that claim is appropriate, and whether an evidentiary hearing will be required to resolve it.

¶21    Second, the Fujas point out that the Adamses not only failed to file a counterclaim for damages and articulate a claim for damages in their initial disclosures, but affirmatively disavowed any claim for damages prior to, and even in the midst of, the trial. *See supra* ¶¶ 6–7. We acknowledge that these facts are at least potentially problematic,[8] but any problems these facts might engender for the Adamses do not relate to the question of whether a claim for damages caused by the injunction must be first stated during the pendency of the injunction case—the sole ground upon which the district court dismissed the Adamses' claim. As discussed above, a claim for wrongful injunction damages is not untimely merely because it

---

8. The right to bring any claim for relief, including a claim for wrongful injunction damages, can of course be curtailed by equitable doctrines like laches, waiver, and estoppel. *See generally Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 2012 UT 66, ¶ 29, 289 P.3d 502 (listing the elements of laches); *IHC Health Services, Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 16, 196 P.3d 588 (listing the elements of waiver); *State v. Hamilton*, 2003 UT 22, ¶ 34, 70 P.3d 111 (listing the elements of equitable estoppel). We offer no opinion as to whether any of these doctrines apply here.

was brought only *after* the injunction was declared wrongful. Indeed, a claim for wrongful injunction damages does not accrue until such a pronouncement (or its equivalent) is made, and a litigant cannot be said to have brought an untimely claim simply because the claim was asserted, for the first time, after such a pronouncement. *See supra* ¶¶ 15–19. And because a claim for wrongful injunction damages is not required to be brought prior to adjudication of wrongfulness, it follows that failure to include information related to such a claim in one's pleadings or initial disclosures filed in the underlying case is not, by itself, a ground for considering such a claim untimely.

CONCLUSION

¶22 The Adamses' claim for wrongful injunction damages, brought for the first time by motion following the district court's determination that the injunction had been improvidently granted, was not untimely. The district court therefore erred by dismissing the claim on that basis. We reverse the court's dismissal of that claim, and remand this matter for further proceedings consistent with this opinion.[9]

────────────

9. The Adamses also ask us to award them attorney fees on appeal. In support of this request, the Adamses cite *Osmond Lane Homeowners Ass'n v. Landrith*, 2013 UT App 20, 295 P.3d 704, wherein we recited the rule that "[a] party who is awarded fees below and prevails on appeal is entitled to recover its attorney fees reasonably incurred on appeal." *Id.* ¶ 33. While the Adamses have unquestionably prevailed in this appeal, they were not awarded attorney fees below *on the issue relevant to this appeal*. Indeed, the district court ruled against the Adamses on that issue, dismissing their claim for wrongful injunction damages, and we therefore confront that issue only as part of the
(continued…)

(…continued)
Adamses' cross-appeal. *See supra* note 2. Thus, the Adamses are not entitled to attorney fees on appeal simply by virtue of the general rule set forth in *Osmond Lane*. The result of this appeal is that the Adamses will, on remand, be able to state a new claim that the district court previously dismissed. Any question regarding the Adamses' entitlement to attorney fees on that new claim has yet to be addressed by the district court. If during litigation on that claim, the Adamses make, and prevail upon, a request for attorney fees, they may as part of that request recover the attorney fees they incurred in this successful appeal. *See Crank v. Utah Judicial Council*, 2001 UT 8, ¶ 44 n.18, 20 P.3d 307 (stating that, where "[t]he question of entitlement to fees at the trial court level has not yet been determined[,] . . . any appropriate award of attorney fees on appeal is dependent upon that determination and should be assessed by the district court on remand"); *Thayer v. Thayer*, 2016 UT App 146, ¶ 41, 378 P.3d 1232 (stating that, "while wife was not the prevailing party below, she has succeeded on appeal in obtaining a reversal of the district court's order," and that in such an instance "the district court on remand should evaluate wife's request for attorney fees" and, if it awards her attorney fees, then "the award should also include wife's attorney fees reasonably incurred . . . on appeal" (quotation simplified)).